ADELARD PHANEUF & another *vs.* ELIZA J. COREY & others.

Middlesex. November 14, 15, 1905. — January 5, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Contract*, Building contracts. *Referee. Arbitrament and Award.*

If the respective rights of the parties under a building contract have been referred by an agreement in writing to a referee for decision, and the referee in making his award keeps within the scope of the submission, the award is not open to question on the ground that the referee was mistaken in his interpretation of the contract.

A contract for the construction of a building provided that the whole of the work should be completed on April 1 of a certain year, and that, in case of a failure of the contractor to complete the building by that date, he should forfeit to the owner $10 per day for each day of delay in completing the building, "the forfeit to be deducted from the contract price." On May 20 the building was substantially completed, but never was wholly completed by the contractor as required by the specifications. There being a dispute as to what the specifica-

tions required, the contractor retained possession of the building until on October 6 of the same year the owner put him out and completed the requirements of the contract through the employment of other persons at a cost of about $400, which fairly represented the value of the work. In an action by the contractor on an account annexed for work done and materials furnished, it was *held*, that, besides deducting from the contract price the sum paid by the defendant in completing the building, the defendant was entitled to deduct as liquidated damages the sum of $10 per day not only to May 20, when the building was substantially completed, but also from May 20 until October 6, when the defendant terminated the employment of the plaintiff and took possession of the building.

CONTRACT for labor and materials performed and furnished in the construction of a building on land of the defendants in Marlborough. Writ dated December 7, 1899.

The first count was on a contract in writing dated August 1, 1898, and the specifications incorporated therein, by which the plaintiffs agreed to construct a two story building on land of the defendants in Marlborough, Massachusetts, to be known as the Corey Building, according to certain plans and specifications, and to complete the building on certain dates, and by which the defendants agreed to pay the plaintiffs for the work the sum of $59,794 in certain instalments. The amount alleged in this count to be due the plaintiffs under the contract was $59,794.

The second count was on the contract and alleged that in addition to the amount of $59,794 the defendants also owed the plaintiffs the sum of $8,539.63 on account of certain alterations made in the work under Article III. of the contract and certain additional work done in consequence of these alterations.

The third count was on an account annexed, and alleged that the defendants owed the plaintiffs the sum of $74,561.25 and interest thereon from November 1, 1899, as stated therein.

The fourth count was on the written contract and alleged that the defendants owed the plaintiffs the sum of $6,426 as damages for certain delays in the work caused by the failure of the defendants to provide certain labor and materials not included in the contract in such a manner as to delay the progress of the work.

The fifth count was on an account annexed, and alleged that the defendants owed the plaintiffs the sum of $8,476.46, according to that account.

The sixth count was on the written contract and on a further written agreement dated December 15, 1898, by which certain differences and disputes which had arisen between the parties were submitted to arbitration. This count alleged that the arbitration was had and an award thereunder made, that all matters submitted by the agreement of December 15, 1898, were finally determined, and that the defendants owed the plaintiffs the sum of $59,794 under the written contract of August 1, 1898.

The seventh count was based on the written contract of August 1, 1898, and on a further oral agreement, changing the written contract, by which the defendants promised to furnish for the use of the plaintiffs in their work under the contract a certain steam heating plant, and to place this plant in the building as soon as it was necessary for the plaintiffs to have it for the purposes of their work. This count alleged that the defendants owed the plaintiffs by virtue of the contracts the sum of $59,794.

The eighth count was based on the written agreement of August 1, 1898, and on the further written agreement of December 15, 1898, and on the further oral agreement to furnish a heating plant, and alleged that the defendants owed the plaintiffs the sum of $59,794 by virtue of these contracts and agreements.

The defendants, in their amended answer, admitted that they executed the contract dated August 1, 1898, but alleged that it was not completely executed by the parties until September 8, 1898; denied that they had broken the contract in any respect; pleaded certain payments amounting altogether to $40,700; denied that any further sums were due the plaintiffs under the contract or otherwise; alleged many breaches of, and failures to perform, the contract on the part of the plaintiffs; admitted certain items of additional work, but alleged that they had paid the plaintiffs therefor; denied that they delayed the plaintiffs in their work; alleged that on account of the failure of the plaintiffs to perform their contract the defendants were obliged to terminate the employment of the plaintiffs and complete the work at their own expense, and set up various other defences based upon specific provisions of the contract.

Article sixth of the contract of August 1, 1898, described in the opinion, was as follows:

" Art. VI. The contractor shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, viz: — the stores and basements shall first be completed and delivered, ready for occupancy by tenants, not later than the first day of December, 1898, and the whole of the work fully completed not later than January first, 1899, and it is especially agreed and understood that in case of the failure of the contractor to deliver said stores and basements ready for said occupancy, or to complete the building as aforesaid, at the times above written, the contractor shall forfeit to said owner the sum of thirty (30) dollars per day for each and every day of delay in the delivery of said stores and basements, and ten (10) dollars per day for each and every day of delay in the completion of the remainder of the building, said forfeit or forfeits to be deducted from the contract price.

" The contractor shall be entitled to receive from the owner. thirty (30) dollars per day for each and every day that said stores and basements may be completed and ready for occupancy by tenants before said first day of December and ten (10) .dollars per day for each and every day that said building shall be completed as aforesaid before said first day of January next."

The agreement of December 15, 1898, was as follows :

" Whereas various differences and disputes have arisen between the owners and contractors named in a certain contract dated August 1, 1898, entered into by Adelard Phaneuf and Henry H. Hunt, parties of the first part, and Eliza J. Corey, Blanche E. Holyoke and Lizzie E. Crowell, parties of the second part, for the erection and completion of a building at Marlborough, Mass., known as the Corey Building, and

" Whereas the owner's superintendent has certified that there is sufficient ground for terminating the employment of the contractors Phaneuf and Hunt, and the owners have notified said contractors that their employment is terminated, and

" Whereas the contractors are desirous of completing the work covered by said contract and in accordance with the terms thereof, and the owners are willing that they should do

so, provided a satisfactory adjustment with proper allowances is now arrived at so as to remove the principal causes of dispute which have already arisen,

"Now therefore the said owners and contractors enter into the following agreements and stipulations: —

"1. They hereby ratify and confirm said contract of August 1, 1898, in all respects, except so far as the same is hereby expressly changed or modified.

"2. The time for the completion of the stores and basements is hereby extended, subject to the same terms and conditions expressed in said original contract, to the first day of March, 1899, and the time for the completion of the whole building is hereby extended to the first day of April, 1899, and the contractors admit that those extensions are now necessary for the completion of the said stores and basements and of the whole building respectively.

"3. They hereby agree to refer to William H. Sayward of the Master Builders' Association the question of what, if any, amount under and by virtue of the terms of said contract should justly and fairly be deducted from the contract price by reason of the said delay, which it is now agreed and admitted is inevitable, and such amount shall be deducted from the next instalment hereafter paid under said contract. And the said Sayward shall consider whether the contractors have suffered because of any fault or delay on the part of the owners in furnishing plans, or in making payments, and if so, shall make proper allowances therefor. But such allowance made to the owners shall not include any such damages to the owners as are referred to in Art. VIII. of the original contract, for which the contractors shall continue to be liable.

"4. The said Sayward shall also determine whether or not the rear and extension walls of said building have been built in accordance with the contract, plans and specifications, and if not, he shall determine whether the owners have a right to insist that the whole or any part of said walls shall be taken down and rebuilt as though the same was new work and according to the original contract, plans and specifications, or shall, if requested by the owners, assess the damages to the owners and building caused by such variations from the contract, plans and

specifications, and the amount thereof shall be deducted from the first instalment which shall hereafter be paid under said contract.

"5. The said Sayward may call for such evidence and witnesses as he may see fit, and the parties hereto agree to furnish the same, and said Sayward shall certify the result of his findings to each of the parties hereto and shall give one copy to the owners and another to the contractors, and all agree to be bound thereby and to accept the same as final.

"6. The contractors agree that it shall be taken as admitted that they now have all drawings which are needed for the immediate prosecution of the work and will give reasonable notice in advance to the owners' superintendent as to what drawings they shall hereafter require and as to the times when they should be furnished by the owners.

"7. As to said rear wall, the liability of said contractors is to be determined by said Sayward, as hereinbefore provided, but nothing herein contained shall be taken to bind the owners to accept other parts of the work unless all the same are done and completed in accordance with the contract, plans and specifications, or to relieve the contractors from their duty to comply with said contract, plans and specifications, as hereby notified, in all respects.

"Executed in duplicate at Boston, Mass., this fifteenth day of December, 1898.

"All expenses of referring the matters to Sayward, as aforesaid, including the charges of said Sayward, shall be equally borne by both parties ; each side to pay its own counsel fees, the charges of any witnesses which it may produce, and the cost of any other evidence which it may offer."

Here followed the signatures and seals of the parties.

The case was referred to an auditor who filed his report on December 31, 1903. At the trial in the Superior Court before *Bishop,* J. the plaintiffs put in evidence the auditor's report and the various exhibits referred to therein which were treated as part of the report, but no further evidence material to the exceptions was introduced by either party.

The auditor's report concluded under the heading "General Findings and Rulings," as follows:

" I have already found that in several important respects the work done by the plaintiffs under the contract of August 1, 1898, was not done in the manner required by said contract; that various items of work required by said contract were not furnished by the plaintiffs, and that the work was not completed at the times specified in said contract.

" I therefore rule that the plaintiffs are not entitled to recover under said contract or under those counts of their declaration (the first, second, fourth, sixth, seventh and eighth,) based thereon.

" I find that the failure of the plaintiffs to perform said contract was not wilful or intentional on their part and that the work done by them has much benefited the defendants by much increasing the value of the defendants' land on which it was done.

" I therefore rule that the plaintiffs are entitled to recover on the common counts (the third and fifth) of their declaration.

" I find that the value of that work done by the plaintiffs which was work required by the original contract, after deducting the several amounts by which, on account of deviations, omissions and delays, the work was less valuable than it would have been if the contract had been fully performed in all respects, was fully as much as, if not more than, the contract price, and that the value of the defendants' land was increased on account of said work by the amount of said contract price.

" I rule that the plaintiffs are entitled to recover the value of this work, not exceeding the contract price, after deducting the amounts by which the work was less valuable than it would have been if it had been performed in the manner required by the contract.

| | |
|---|---:|
| The contract price was | $59,794.00 |
| It is agreed that the defendants have paid to the plaintiffs or their order, | 40,700.00 |
| The balance due, if the contract had been fully performed, would, therefore, have been, | $19,094.00 |

" The amounts by which the work was less valuable than it

would have been if the contract had been fully performed are as follows : —

| | | | | | |
|---|---|---|---|---|---:|
| On account of defects in plastering, | | | | | $700.00 |
| " | " | " | " | " fireproofing, | 800.00 |
| " | " | " | " | " store entrance platforms, | 150.00 |
| " | " | " omitted lanterns, | | | 250.00 |
| " | " | " | " | brick, | 391.95 |
| " | " | " | " | piles, | 100.80 |
| " | " | " omissions in offices 18 and 19, | | | 30.00 |
| " | " | " insurance premiums, | | | 245.00 |
| " | " | " omitted painting, | | | 383.18 |
| " | " | " | " | work on rear wall of second story, | 173.88 |
| " | " | " delay in work, | | | 1,430.00 |
| | | | | | $4,654.81 |

" I therefore deduct $4,654.81 from $19,094 and find that the plaintiffs are entitled to recover the balance, viz., $14,439.19 under the third count of their amended declaration.

" In addition to the work required by the contract the plaintiffs did certain other work not required by said contract. I find that the fair value of this work was, as heretofore stated, $3,928.39, and that the value of the building and of the defendants' land on which it was erected was further increased by that amount by reason of said additional work.

" I therefore find that in addition to the amount recovered under the third count of their amended declaration the plaintiffs are entitled to recover the sum of $3,928.39 under the fifth count of said amended declaration.

" If it should be held that said additional work was really done under the article of the contract (Art. III.) providing that the value of alterations, as computed by the owners' superintendent or by arbitration, should be added to the contract price, the plaintiffs could still recover the value of said additional work because the contract price would, by virtue of said article, be expanded by an amount representing the value of said additional work.

" I therefore find that the plaintiffs are entitled to recover under the said third and fifth counts the sum of eighteen

thousand three hundred and sixty-seven and fifty-eight one-hundredths dollars ($18,367.58) with interest at the legal rate from the date of the writ."

At the close of the evidence it was agreed by counsel for both parties with the consent of the judge that the judge should make *pro forma* rulings on all questions of law in accordance with the rulings of the auditor, either party to be at liberty to save questions of law by excepting to the rulings made or by requesting different rulings and excepting to the refusal of the same.

The judge accordingly instructed the jury at the request of the defendants that the plaintiffs could not recover in any event more than the amount allowed by the auditor plus an additional amount of $160 for extra gas piping which the parties agreed should be allowed, and that the defendants were entitled as a matter of law to all deductions from the contract price made by the auditor.

The defendants further requested the judge to instruct the jury as follows :

2.  Upon the facts as found by the auditor and the additional facts agreed to by the parties in regard to the delay in the completion of the building the defendants are entitled as a matter of law to have deducted from the contract price in addition to the deductions made by the auditor the sum of $30 per day for each day from December 1, 1898, to March 1, 1899, and the sum of $10 per day for each day from January 15, 1899, to April 1, 1899, and the total amount found to be due by the auditor should be reduced by the amount of this deduction.

3.  Upon the facts as found by the auditor and the additional facts agreed to by the parties in regard to the delay in the completion of the building the defendants are entitled as a matter of law to have deducted from the contract price in addition to the deductions and allowances made by the auditor the sum of $10 per day for each day from May 20, 1899, to October 6, 1899, and the total amount found to be due by the auditor should be reduced by the amount of this deduction.

The judge refused both of these requests but instructed the jury at the request of the plaintiffs that the plaintiffs were entitled to recover the whole amount found due by the auditor plus the $160 above referred to with interest from the date of the

writ, and a verdict was rendered accordingly. The defendants alleged exceptions.

*R. D. Weston-Smith & H. W. Brown,* for the defendants.

*E. R. Anderson,* (*A. T. Smith* with him,) for the plaintiffs.

HAMMOND, J. Although the record is voluminous, only two questions are raised here.

The first respects the validity of the award of Sayward, the referee named in the agreement of December 15, 1898. Under the original contract the time set for the stores and basements was " not later than the first day of December, 1898," and that set for the completion of the whole building was " not later than January first, 1899." Under the agreement of December 15, 1899, these times were changed respectively to the first day of March, and the first day of April, 1899. One of the questions referred to Sayward is stated in the agreement as follows : " The question of what, if any, amount under and by virtue of the terms of said contract should justly and fairly be deducted from the contract price by reason of the said delay, which it is now agreed and admitted is inevitable, and such amount shall be deducted from the next instalment hereafter paid under said contract. And the said Sayward shall consider whether the contractors have suffered because of any fault or delay on the part of the owners in furnishing plans, or in making payments, and if so, shall make proper allowances therefor. But such allowance made to the owners shall not include any such damages to the owners as are referred to in Art. VIII. of the original contract, for which the contractors shall continue to be liable."

The referee heard the parties, and in an elaborate report in which he goes very carefully over the whole matter awards no damages to the owners for this delay.

It is strongly argued by the owners, these present defendants, that the award is invalid upon the ground that it was outside the scope of the submission. It is familiar law that an award made within the scope of the submission is not made invalid by a mistake of the arbitrator as to law or fact. An inspection of the report shows that the arbitrator was guided, as he should have been, by the terms of the contract as he understood them. In the first paragraph of his report he states that the question for

him was to determine what amount, if any, under and by virtue of the terms of the contract and this agreement " should be justly and fairly deducted from the contract price by reason of said delay." At the threshold of the hearing he ruled clearly that " the terms of the contract could not be waived, for the agreement rested distinctly upon them, and further that a proper conclusion could only be arrived at by using the terms and conditions of the contract as a guide, for they alone indicate what was in view when the contract was made." Further inspection shows that with the contract as his guide he reasoned to his conclusions. He kept within the scope of the submission. Even if he was mistaken in his interpretation of the legal effect of the contract, the award does not thereby become invalid. The parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him.

The second question arises upon the contention of the defendants that for delay in the completion of the building, allowance should be made to them at the rate of ten dollars per day from May 20, 1899, the time to which the auditor computed the allowance, until October 6, 1899, the day upon which the defendants terminated the employment of the plaintiffs and took possession of the building.

The sixth article of the contract, as amended by the agreement of December 15, 1899, required that the stores and basements should first be " completed and delivered, ready for occupancy by tenants," on March 1, 1899, and the whole of the work " fully completed" on April 1, 1899; and it is further provided in this same article as follows: " In case of the failure of the contractor to deliver said stores and basements ready for said occupancy, or to complete the building as aforesaid . . . [at these respective times] . . . the contractor shall forfeit to said owner the sum of thirty dollars per day for each and every day of delay in the delivery of said stores and basements, and ten dollars per day for each and every day of delay in the completion of the remainder of the building," " the forfeits to be deducted from the contract price."

As to the condition of the work of May 20, 1899, the auditor finds that in many places in the walls and ceilings of the first and second stories the plastering was crooked and uneven, that

this crookedness was visible to the eye without the aid of a "straightedge," or other tools, and was "greater than it should be in good work"; that in other respects "the plastering work was reasonably well done and resulted in a fairly good piece of work." He also finds that "the amount by which the building is less valuable on account of such crookedness is less than would be the cost of making the plastering straight and even." He further finds that an allowance of $700 should be made to the defendants by reason of this defective work. The owners' superintendent was not satisfied with this plastering and ordered the contractor to remove it and replaster, and the auditor finds that "the defendants never waived or abandoned their right to have the plastering made even and straight prior to October 6, 1899, when they terminated the employment of the plaintiffs and took possession of the building," and he further finds that "negotiations between the parties with a view to a settlement of the controversy as to the plastering continued up to said October 6, 1899." On this date, when the defendants took possession, "certain painting work, to wit, the second coat of varnish on the office floors, the painting and tinting of the walls and ceilings of the offices in the second story, the tinting of the ceiling of the second story corridor and the painting of the shutters and outside fire doors had not been done." This work was required by the contract. After taking possession the defendants had this work done by persons other than the plaintiffs, at a cost of $383.18, "which sum fairly represented the value of the work." This sum was deducted by the auditor from the contract price of the building.

The auditor finds that the stores and basements were substantially complete though not, as appears above, in all respects in accordance with the contract, on April 1, 1899, and that the remainder of the work was substantially completed, with the same qualification, on May 20, 1899. In other words, the auditor finds that at the latter date, except as hereinbefore stated, the building was substantially completed. He allows the per diem forfeit of $30 per day from March 1 to April 1, and $10 per day from April 1 to May 20. As to the claim for the forfeiture after May 20, the auditor proceeds as follows:

"I find that while, as above stated, the stores and basements were substantially completed on April 1st, 1899, (or 31 days after the date fixed for their completion as extended by the agreement of December 15, 1898,) and the remainder of the building was substantially completed on May 20, 1899, (or 50 days after the date fixed for its completion by said agreement of December 15, 1898,) the stores, basements and remainder of the building were not entirely or absolutely completed in strict accordance with the specifications until later dates, and indeed were never so completed. That is to say, the plastering, fireproofing and store entrance platforms have never been made to conform to the requirements of the specifications, and certain comparatively small items, — certain lanterns, and certain painting in the second story offices and corridor and on the outside shutters and fire doors, — have never been furnished by the plaintiffs. Moreover certain shutters and Mason treads were not furnished until some time in July, 1899. Deductions from the contract price on account of all these defects and omissions have been made in this report, and I rule that as the building was substantially completed and ready for occupancy on the above dates, liquidated damages for a delay or failure in completion extending beyond those dates, should not, under the provisions of the contract, be allowed."

In considering this matter it is to be noted that under Article IV. of the contract the owners' superintendent had the authority to condemn the plastering work as unsound and improper, and that it was the duty of the contractors to " take down " the portion of the work so condemned. It is further to be noted that painting to the amount of nearly $400 which was required by the contract never was done by the plaintiffs. Some of this perhaps could not have been done until the question whether the order of the superintendent about the plastering work should be carried out. Instead of insisting that the building was complete and delivering it to the defendants, the plaintiffs retained possession of it and waited until ejected by the defendants. Under these circumstances it is plain that the building, although near completion, was not wholly completed within the meaning of the contract, but was held by the plaintiffs for the purpose of going on if required by the contract. And the auditor's finding

must be taken to mean only that the building with these exceptions was substantially completed on May 20.

We see no reason why the defendants are not entitled to have the forfeit of $10 a day allowed them to October 6, 1899. There is nothing in *Hall* v. *Crowley*, 5 Allen, 304, upon which the plaintiffs rely, inconsistent with this view.

*Exceptions sustained.*