Trustees of the Boston & Maine Corp. *v.* Massachusetts Bay Transp. Authy.

(1936). This is especially true where the judge has previously excluded the particular argument as improper. *Commonwealth* v. *Jasliwicz*, 361 Mass. 877 (1972). In the instant case, as in the *Pettie* case, 363 Mass. at 841 (1973), the record indicates that it was "clear to the jury that the judge's comment was addressed only to the objectionable and unwarranted portions of the argument." Such being the case, the interruption was not only appropriate, but may well have been required. Accordingly, there was no error.

5. Pursuant to the requirements of c. 278, § 33E, we have reviewed the entire transcript and record and have found no reason either to order a new trial or to direct a verdict of a lesser degree of guilt.

*Judgment affirmed.*

TRUSTEES OF THE BOSTON AND MAINE CORPORATION *vs.*
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Suffolk.   October 9, 1974. — February 24, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Interest.   Arbitration.   Judgment.   Practice, Civil,* Correction of judgment. *Res Judicata.   Law of the Case.*

Where an arbitration award determined the valuation of certain property but did not order the payment of any sum of money, a Superior Court clerk improperly treated confirmation of the award as a money judgment to which interest should automatically be added. [60-61]

After a clerk of the Superior Court had, in entering judgment following confirmation of an arbitration award, erroneously added interest to the amount awarded, it was within the power of the Superior Court to order correction of the judgment either pursuant to its powers under G. L. c. 231, § 56, or as an exercise of its innate power over its records and ministerial officers. [62-63]

An order of the Superior Court which only confirmed an arbitration award establishing the value of a railroad right of way and which did not order the payment of a specified sum of money, and a subsequent judgment improperly adding interest, did not foreclose, by principles of res judicata or the law of the case, the question whether interest was payable on the amount awarded, because assessment of interest was irrelevant to the issue of valuation before the court. [63-65]

On an amount awarded by an arbitrator establishing the value of a railroad right of way, to be purchased by the defendant from the plaintiff, where the contract between the parties specified that no payment should be due until the plaintiff tendered a good deed and the plaintiff failed to tender a deed because the defendant was seeking to vacate the arbitrator's award, interest was due from the time when the plaintiff would have tendered a good deed had the award not been challenged. [65]

Where some of the items determining value included in an arbitration award on the purchase of a railroad right of way were contingent upon actions to be taken by a regulatory commission, interest on those items should be run from the date of the regulatory commission's actions. [66]

APPLICATION for confirmation of an arbitration award filed in the Superior Court on September 22, 1971.

Following the decision of this court reported in 363 Mass. 386 (1973) a motion described in the opinion was heard by *Ford, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Andrew C. Culbert (Edward I. Masterman* with him) for the Trustees of the Boston and Maine Corporation.

*Joseph H. Elcock (Ronald G. Busconi* with him) for the Massachusetts Bay Transportation Authority.

QUIRICO, J.  This case arose out of an arbitration award confirmed by the Superior Court, which confirmation was upheld by this court in *Trustees of the Boston & Maine Corp.* v. *Massachusetts Bay Transp. Authy.* 363 Mass. 386 (1973).  The parties are herein referred to as the B & M and the MBTA.  As explained at some length in our prior opinion, this award, in essence, established the value of a railroad right of way known as the "Read-

ing Branch Line" which the MBTA, by exercising an option, had agreed to purchase from the B & M. The "Modified and Corrected Findings and Award" by the arbitrator were divided into three parts: (1) the fair market value of the land and property involved was set at $15,891,896; (2) the damages to be suffered by the B & M if the Interstate Commerce Commission (ICC) were to permit abandonment of certain freight service on the line were established at $2,147,000, "which award is to be held in abeyance" pending ICC action; and (3) the value of an easement to run in favor of the B & M, to be granted by the MBTA in the event the ICC were to determine that the freight service was not to be abandoned, was placed at $278,430. No mention of interest to be added to any of these sums was contained in the agreement to arbitrate, the arbitrator's award, or in our 1973 opinion.

Following receipt of the rescript in that case, however, an assistant clerk of the Superior Court entered a judgment in the sum of $19,716,513.31, representing items (1) and (2) above plus interest[1] from the date the petition for confirmation of the arbitrator's award was filed in the Superior Court. The MBTA thereafter filed a "Motion for Correction for Clerical Error," on the ground "that a clerical error is contained in the Clerk's record in that a monetary judgment with interest was entered whereas the Arbitrator's Award determined only the valuation of property." After hearing, a judge of the Superior Court allowed this motion and entered a "Memorandum of Decision, Rulings and Orders Re: Motion to Correct Judgment and Related Matters" and an order vacating the judgment with interest and providing for the entry of a new judgment without interest. The B & M duly excepted to the actions of the judge and also claimed an appeal therefrom. Since all questions sought to be raised

---

[1] The total interest thus added by the clerk amounts to $1,677,617.31.

are open on the B & M's bill of exceptions, we do not consider the appeal. We thus follow the same procedure as in the earlier case. *Trustees of the Boston & Maine Corp.* v. *Massachusetts Bay Transp. Authy.* 363 Mass. 386, 390 (1973).

The parties in their briefs have presented essentially these three questions: (1) was the clerk below correct in entering, as he did, a money judgment with interest for the plaintiffs, (2) was this action of the clerk, if erroneous, beyond the corrective power of the Superior Court, and, finally, (3) was the interest question closed by principles of res judicata on the entry of judgment by the clerk? We answer all these questions in the negative. Nevertheless, for reasons which will appear, we have determined that a money judgment with interest, subject to certain contingencies, should now be entered.

We begin with the question whether the clerk's entry of a money judgment with interest was in fact erroneous. The B & M argues that the clerk "was obligated to follow the decisions and statutory law which determine the computation of interest on arbitrator's awards." Cases are cited to the effect that the absence of language in an opinion on the question of interest constitutes an affirmative determination that interest should be computed and added to the judgment by the clerk. See, for example, *Hobbs* v. *Cunningham*, 273 Mass. 529, 536 (1930); *Moseley* v. *Briggs Realty Co.* 320 Mass. 278, 279 (1946); *J. J. Struzziery Co. Inc.* v. *A. V. Taurasi Co. Inc.* 342 Mass. 113, 115 (1961). Relying on these principles, the B & M asserts that the clerk "followed the . . . case and statutory law" in entering a judgment with interest. The B & M further relies on *Glenn Acres, Inc.* v. *Cliffwood Corp.* 353 Mass. 150, 156 (1967), for the rule that, while the Uniform Arbitration Act for Commercial Disputes, G. L. c. 251, does not expressly provide for computation of interest; interest is nevertheless to be awarded from the date application was made to the court for confirmation of the award. See G. L. c. 251, § 14.

The *Glenn Acres* case, however, involved an unconditional order that one party pay the other a specific sum of money.  See 353 Mass. 150, at 156 (1967).  This clearly distinguishes that case from the present case since here it is clear from the arbitration clause in the contract, the arbitration award, and our 1973 opinion affirming the Superior Court's confirmation of the award that all that was at issue or decided was (1) the value of the right of way and appurtenant property, (2) the damages to be suffered in the event the B & M were to discontinue certain freight services, and (3) the amount, representing the value of an easement, the B & M was to pay the MBTA in the event the B & M were to continue to use the line for freight services.  We believe the rule that interest should automatically be added to a judgment or decree does not apply in these circumstances.  That rule applies only where the judgment or decree is one of a final nature which establishes or, in the case of arbitration, enforces a specific duty to pay a sum of money.  Cf. *Bowers* v. *Hammond,* 139 Mass. 360 (1885).  Our 1973 opinion upheld the Superior Court's confirmation of the arbitrator's determination of the three amounts in dispute, but it included no final order for payment of any sum of money.[2]

_____

[2] The MBTA quotes the principle that "[i]nterest does not run until money becomes due." *Ratner* v. *Hill,* 270 Mass. 249, 253 (1930). The contract in the present case provided that "[n]o payment shall be due from the Authority upon the exercise of said options unless and until there shall be delivered to the Authority a [good record] deed . . . together with a release from the Trustees under . . . [prior] mortgages." According to the MBTA, no deed was tendered by the B & M, so money never became due and interest could not run. We have difficulty in ruling on this argument since the record does not explicitly state whether the tender was or was not made, although the clear inference from the trial judge's "Memorandum of Decision, Rulings and Orders Re:  Motion to Correct Judgment and Related Matters" is that it was not.  We need not determine whether this issue is properly before us because, in any event, we agree with the B & M's statement that tender "would have been a useless, futile and ceremonious act" during the period when the MBTA was seeking to

Having determined that the clerk acted erroneously, we turn to the question whether it was within the power of the court to correct that mistake. We think it clearly was. General Laws c. 231, § 56, as in force at the time the Superior Court ordered the correction of the judgment,[3] provided: "The court in which a judgment has been rendered, or to which it has been removed by writ of error, may, if justice so requires and the amendment is in affirmance of the judgment, allow formal defects or imperfections in the record or proceedings to be corrected or amended." This statute, moreover, is merely declarative of the innate power of a court over its records and its ministerial officers; this power would probably exist in the absence of a statute and perhaps even in the face of a statute which attempted to deny it. See the Declaration of Rights of the Massachusetts Constitution, art. 30; Freeman, Judgments, § 145 (5th ed. 1925). Indeed, over 150 years ago this court regarded it as "a well settled rule that any mistake arising from the misprision of the clerk may be amended and set right." *Atkins* v. *Sawyer,* 1 Pick. 351, 354 (1823). And in *Webb* v. *Cohen,* 280 Mass. 292, 293 (1932), we said: "There is an inherent and necessary power in a court of justice acting on the motion of an interested party . . . or on its own motion to correct errors and remedy omissions in its records in order that they shall speak the truth." No further cita-

---

vacate the arbitrator's award. Although performance of a particular act by one party is contractually specified to be precedent to the arising of an obligation in another, the prior act need not be performed where it would be a hollow gesture sure to be disregarded by the other party. *Lowe* v. *Harwood,* 139 Mass. 133, 135-136 (1885). *Schilling* v. *Levin,* 328 Mass. 2, 5 (1951). *Leigh* v. *Rule,* 331 Mass. 664, 668 (1954). *Mayer* v. *Boston Metropolitan Airport, Inc.* 355 Mass. 344, 354 (1969).

[3] Statute 1973, c. 1114, § 171, amended G. L. c. 231, § 56, to limit its applicability to the District Courts. For the present standards now applicable in other courts, see Mass. R. Civ. P. 59 (e), 60, 365 Mass. 827, 828 (1974).

tions are necessary to support the rule that if the clerk errs in making an entry on the record, the court may order that error corrected. As we have concluded that entry of the judgment at issue here was incorrect as to the item of interest, the court below acted within its power in setting the record straight.

The third question raised by the parties is whether the matter of interest was closed by principles of res judicata following termination of the earlier litigation between these parties. The argument of the B & M runs like this: The absence of language concerning interest in this court's decisions has been considered a determination that interest should be computed and added to the judgment by the clerk. The interest issue was thus determined by the silence of this court on that issue in our 1973 decision. When the judgment was entered by the clerk, this argument continues, the matter became res judicata and cannot now be relitigated.

This argument assumes that this court will have ruled that the clerk correctly entered judgment in an amount which included interest. We have held above that the clerk incorrectly included interest in the amount of the judgment. As a basis for our conclusion that the entry was wrong, we determined that the only matters presented to the arbitrator and, hence, to the courts in the earlier litigation were the proper valuation of certain property and rights. Our ruling that a money judgment (in the sense of an order that one party pay the other a particular sum of money) should not have been entered renders wholly inapposite the many cases cited by the B & M holding that, in the absence of language to the contrary, interest should automatically be added to a money judgment. The lack of mention of interest in our 1973 opinion was not, as the B & M contends, an implied ruling that interest should be computed and included in a money judgment, but rather a reflection of the fact that the question of interest was not present in any form in the case then before us.

As stated in Restatement: Judgments, § 1 (1942): "Where a reasonable opportunity has been afforded to the parties to litigate a claim before a court which has jurisdiction over the parties and the cause of action, and the court has finally decided the controversy, the interests of the State and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them." Comment (c) to this section emphasizes that the enunciated principle of finality "is applicable only where the parties have been afforded a fair opportunity to litigate a claim." No such opportunity was presented to raise the interest issue in the prior litigation, the issue being irrelevant to that proceeding. Accordingly, the matter is not res judicata.[4]

In light of the conclusions discussed above, the exceptions are overruled. Nevertheless, now that the propriety of adding interest to the amounts established by the arbitrator has been fully briefed and argued by both parties, we believe it appropriate that we establish guide-

---

[4] While we have used the descriptive words "res judicata" in discussing this claim of the B & M that our 1973 opinion precludes the MBTA from now raising or relitigating the matter of interest, we have done so only because both parties, in their briefs and oral arguments, have discussed this claimed defense in terms of "res judicata." This does not mean that we thereby subscribe to the label of "res judicata" which the parties have given to the issue. For the purposes of this decision it is not necessary that we decide whether the defense is properly so labeled, or whether it would be more accurate to label or identify the issue as one involving the "law of the case." If we are merely dealing with an ancillary continuation of the same proceeding involved in our 1973 decision, the proper doctrine to invoke would seem to be that of the law of the case. See, generally, Vestal, Law of the Case: Single-Suit Preclusion, 1967 Utah L. Rev. 1. On the other hand, if the present question is actually whether an issue — the propriety of adding interest to certain values determined by an arbitrator — was settled in a prior case which has gone to judgment on the merits, the proper doctrine to invoke would seem to be that of res judicata, including the concept of collateral estoppel.

Regardless of the terminology applied or doctrine invoked, the inescapable conclusion is that a judgment settles only issues and

lines by which the Superior Court, on remand, can finally settle this matter. The underlying principle in this area is that a wrongful delay in payment of a sum of money deprives the prospective payee of the use of the money during that period, and that there ought to be compensation for this delay. *Royal Paper Box Co.* v. *Munro & Church Co.* 284 Mass. 446, 451-452 (1933). *Johnson* v. *Hazen,* 333 Mass. 636, 638-640 (1956). These principles are applicable in the present case notwithstanding our determination that the clerk erred in treating the confirmation of the arbitrator's award as a money judgment to which interest should automatically be added. The record, however, contains uncertainties which must be solved before the amount of the interest to be included in the judgment in this case can be computed.

First, the contract underlying the dispute provided that no money should become due until a good record deed and a release under prior mortgages were tendered to the MBTA by the B & M. While we have determined that no such tender was required while the MBTA was seeking to vacate the arbitrator's award, see fn. 2, *supra,* the general rule that interest shall not run until money becomes due, *Ratner* v. *Hill,* 270 Mass. 249, 253 (1930), requires that the Superior Court on remand find the date on which the B & M could have and would have tendered a conforming deed had this dispute not been in litigation. The B & M will then be entitled to interest from that date on the $15,891,896 valuation found in part (1) of the arbitrator's award.

---

claims which are before the court at that point in the proceeding; it generally does not preclude the later assertion of a claim or raising of an issue which is different from those theretofore adjudicated. See Restatement: Judgments, § 68 (1942); Vestal, Res Judicata/Preclusion V-411 (1969). See also *Boylston Housing Corp.* v. *O'Toole,* 321 Mass. 538, 544-545 (1947). This is a fortiori true where, as here, the judgment in question was entered incorrectly because of clerical error.

As to the $2,147,000 valuation of damages to be paid by the MBTA and the $278,430 valuation of an easement to be paid by the B & M, both of these matters, in opposite ways, were contingent on ICC approval of the B & M's abandonment of freight services on part of the Reading line. Interest on whichever of these amounts becomes due should run from the date of ICC action. On remand, therefore, the Superior Court should ascertain whether such approval or disapproval has taken place. If the ICC has not acted, the Superior Court should retain jurisdiction until such action occurs.

The exceptions are overruled, the appeal is dismissed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*