Houston, J.
This is a continuation of an action filed by Kittredge Holdings, Inc. in September 2000 asserting claims relating to a stock purchase agreement and a stock sale that occurred in March 1999. The parties were ordered by this Court to arbitration pursuant to an applicable clause in the stock purchase agreement. The parties appeared before arbitrator David Geronemus in November 2001. Arbitrator Geronemus issued an “Arbitration Opinion and Award” on February 11, 2002 generally favorable to the plaintiffs. The plaintiffs now move to confirm the arbitration award and for judgment, while the defendants move to vacate the arbitration award and for judgment. For the reasons stated below, the plaintiffs’ motion for confirmation of the arbitration award is DENIED without prejudice and the defendants’ motion to vacate the arbitration award is ALLOWED to the extent that this matter is REMANDED to the arbitrator for further action consistent with paragraph 5 of arbitration agreement.

Background

On March 19, 1999, defendant Kittredge Holdings, Inc. (“Kittredge Holdings") purchased the stock of two family companies, J. Kittredge & Sons, Inc. and Kittredge Engineering, Inc. (together, “the companies”) from plaintiffs John L. Kittredge, Jr. (“John”), James L. Kittredge (“James”) and Lawrence C. Zalcman[4] (“Zalcman”), for approximately $21,000,000. The companies were in the business of close tolerance precision machining, brazing, and metal fabrication operating in Hudson and Marlboro, Massachusetts. Specifically, the companies manufactured, among other things, precision-machined metal take-up reels. These take-up reels were, in turn, provided to manufacturers for use as components in digital linear tape backup systems. Digital linear tape backup systems are used in large mainframe computers.
Before the period during which the incidents relevant to this litigation took place, one manufacturer, Quantum Corporation (“Quantum”), was the companies’ largest purchaser of take-up reels. Quantum purchased the companies’ take-up reels at nearly 400,000 reels per year. Business with Quantum accounted for approximately half of the companies’ total sales and over half of their total profits. Through early 1998, the companies were Quantum’s sole suppliers of take-up reels. During the remainder of that year, the companies were no longer the sole suppliers, but did provide the vast majority of take-up reels needed by Quantum.
In early 1998, John, James and Zalcman decided to sell the companies. Among the potential purchasers was Full Circle Investment, Inc. (“Full Circle”). As the negotiations moved forward, Full Circle incorporated Kittredge Holdings to serve as the holding company for thepurchase. During the negotiations, the plaintiffs made sales projections which indicated that sales to the companies’ existing customers, including Quantum, would continue at current levels. Additionally, the plaintiffs represented to Kittredge Holdings that they did not believe Quantum would either 1) seek an additional supplier of take-up reels, or 2) design a new spoked take-up reel to replace the companies’ existing take-up reel.
Unknown to Kittredge Holdings however, the companies had experienced a myriad of production problems which severely reduced their ability to meet Quantum’s production requirements. As a result, Quantum had to shut down its production lines on several occasions. Quantum began to purchase progressively more take-up reels from other suppliers by the end of 1998 and substantially less from the companies. Quantum had also approved a design for a new spoked take-up reel, with production on the new reel set to begin in January 1999.
Kittredge Holdings signed the Stock Purchase Agreement on February 8, 1999 then conducted its due diligence investigation until the transaction was closed on March 19, 1999. On or about November 1999, Kittredge Holdings conducted an investigation into the companies’ poor earnings and discovered what it perceived to be misrepresentations by the plaintiffs regarding the companies’ relationship with Quantum.
As a result, it, along with the companies, filed a complaint, later amended, against John, Jack, and Zalcman as trustee, alleging misrepresentations by John and Jack which resulted in the breach of several sections of the stock purchase agreement and the certification found in the stock certificate.
Specifically, Kittredge Holdings set forth three counts in its amended complaint. In the first count, it claimed that the alleged misrepresentations resulted in breaches of contractual representations and warranties found in, among other sections, Sections 4.5(b), 4.9, 4.22 and 4.25 of the stock purchase agreement. In the second count, Kittredge Holdings claimed a breach of contract in the certification found in the stock certificate. Finally, the third count alleged a violation of G.L.c. 93A.
As stated previously, the parties were ordered to arbitration. On December 21, 2000, John, Jack, and Zalcman (as trustee), and Kittredge Holdings entered into an arbitration agreement. Paragraph 4 of the agreement states in relevant part, “The parties agree that the proposed arbitration shall resolve all claims and defenses relating to (1) the acquisition of J. Kittredge & Sons Inc. and Kittredge Engineering by Kittredge Holdings, Inc.; (2) entitlement to the escrow fund; and (3) the termination of John Kittredge and James Kittredge by J. Kittredge & Sons, Inc.”
Paragraph 5 of this agreement states in its entirety: “The parties agree that the arbitrator shall issue a separate award and/or finding with respect to each claim. The parties agree that the arbitrator shall issue *41 a statement of reasons with respect to each such award and/or finding.”
During the proceedings in November 2001, arbitrator David Geronemus heard Kittredge Holdings’ Sections 4.5(b), 4.9,4.22 and 4.25 breach claims, its stock certification breach claim and the claim of a violation of c. 93A. John and Jack also argued during the hearing that they were wrongfully terminated from positions at J. Kittredge & Sons, Inc.
On February 11, 2002, Arbitrator Geronemus issued a six-page “Arbitration Opinion and Award” favorable to John and Jack as to the issue of damages and on their counterclaim for wrongful termination. The arbitrator did not issue a separate award and/or finding with respect to each of the six Kittredge Holdings claims. It also does not appear that the arbitrator issued a statement of reasons with respect to each such award and/or finding.
The plaintiffs now move for confirmation of the arbitration award and for judgment. The defendants move to vacate the arbitration and award, arguing that the arbitrator failed to author a decision in accordance with paragraph 5 of the arbitration agreement. This Court agrees.

Discussion

General Laws, chapter 251 governs the arbitration of commercial disputes in the Commonwealth. A written agreement to arbitrate “shall be valid, enforceable and irrevocable.” G.L.c. 251, §1. The general rule is that an arbitrator, acting pursuant to c. 251, is under no obligation to include in his award any statement of reasons or findings. Fidelity and Cas. Co. of New York v. Cooke, 357 Mass. 763, 763 (1970). However, an arbitrator may not ignore the plain words of a contract. See Grobet File Co. v. RTC Sys, Inc., 26 Mass.App.Ct. 132, 134-35 (1988) (“arbitration is a creature of agreement”).
Here, the parties expressly agreed that the arbitrator would provide them with a separate award and/or finding for each claim and a statement of reasons with respect to each such award and/or finding. Kittredge Holdings presented its argument to the arbitrator on each of its six claims. A careful reading of the arbitrator’s decision, however, reveals no separate award and/or finding or statements of reasons with respect to the claims of the breach of Sections 4.5(b), 4.9, 4.22 or 4.25 of the stock purchase agreement or a separate award and/or finding or statement of reasons with respect to the claim of a breach of the stock certificate or with respect to the c. 93A claim. It cannot be said, therefore, that “(t]he parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him,” Phaneuf v. Corey, 190 Mass. 237, 247 (1906), because it is clear that what they agreed to was a decision with each claim specifically addressed and what they received was a decision lacking in findings and reasons as to Kittredge Holdings’ claims.
An award and/or finding and the statements of reasons as to each claim must first be rendered before any determination can be made as to whether or not the arbitration award should be confirmed or vacated. See Carter v. Carter, 109 Mass. 306, 309 (1872) (“[w]henever a case is referred with the consent of the parties to arbitration, whether by rule of court, by mutual bonds in the country, or by agreement before a justice of the peace under the statute, the decision of the arbitrator upon the question submitted to him is final, both upon law and facts, unless otherwise provided by the terms of the submission or of his award; and can be set aside only for exceeding the terms of the submission, for fraud or corruption, or for such mistake as shows that he did not apply the rules which he intended to apply to the decision of the case” (citations omitted; emphasis added)). Here, the arbitrator’s decision is not final unless it conforms to the terms, specifically paragraph 5, of the arbitration agreement.
This Court, therefore, remands the decision to the arbitrator, without rehearing, for amendment consistent with paragraph S of the arbitration agreement. See Blood v. Robinson, 55 Mass. 389, 391 (1848) (precursor statute to c. 251, §12 contained enabling words allowing an arbitration award to be, among other things, recommitted to the arbitrator by the court without a rehearing).

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for confirmation of the arbitration award is DENIED without prejudice and the defendants’ motion to vacate the arbitration award is ALLOWED only to the extent that the “Arbitration Opinion and Award” issued on February 11, 2002 by Arbitrator David Geronemus is REMANDED to him for amendment consistent with paragraph 5 of the arbitration agreement.
Specifically, he shall:
(a) make a separate award and/or finding on Kittredge Holdings, Inc.’s claim ofbreach of Section 4.5(b) of the stock purchase agreement and a statement of reasons with respect to that award and/or finding;
(b) make a separate award and/or finding on Kittredge Holdings, Inc.’s claim ofbreach of Section 4.9 of the stock purchase agreement and a statement of reasons with respect to that award and/or finding;
(c) make a separate award and/or finding on Kittredge Holdings, Inc.’s claim ofbreach of Section 4.22 of the stock purchase agreement and a statement of reasons with respect to that award and/or finding;
(d) make a separate award and/or finding on Kittredge Holdings, Inc.’s claim ofbreach of Section 4.25 of the stock purchase agreement and a statement of reasons with respect to that award and/or finding;
*42 (e) make a separate award and/or finding on Kittredge Holdings, Inc.’s claim of breach of the certification of the stock certificate and a statement of reasons with respect to that award and/or finding; and
(fj make a separate award and/or finding on Kittredge Holdings, Inc.’s claim of a violation of c. 93A and a statement of reasons with respect to that award and/or finding.

Lawrence C. Zalcman sold the stock in his capacity as trustee of both the John Kittredge Family Irrevocable Stock Trust and the James Kittredge Family Irrevocable Stock Trust (together, “the trusts”).