EDWARD J. MORCEAU & others vs. GOULD-NATIONAL
BATTERIES, INC.

Hampshire.    September 29, 1961. — April 9, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Arbitration. Contract, What constitutes, With labor union, For arbitration. Labor. Jurisdiction, Federal question, Labor. Equity Jurisdiction, Arbitration.*

A State court has jurisdiction concurrent with Federal District Courts to enforce an arbitration award under a collective bargaining agreement between an employer and a labor organization representing his employees within the ambit of § 301 (a) of the Labor Management Relations Act of 1947, 29 U. S. C. (1952) § 185.   [123–124]

Judicial inquiry in reviewing an award of an arbitrator to whom was referred a dispute under a collective bargaining agreement between an employer and a labor organization representing his employees is limited to a determination of whether the arbitrator acted within the scope of the reference; an interpretation of the agreement by the arbitrator is binding on the parties.   [124]

Where a company purchased a corporation and subsequently entered into a collective bargaining agreement with a union containing provisions for the arbitration of disputes, and simultaneously entered into a stipulation with the union for the reëmployment of former employees of the corporation, the collective bargaining agreement and the stipulation together comprised the contract between the company and the union for the referral of disputes to arbitration; and an arbitrator to whom were referred the questions, first, whether the union had authority "to represent . . . *under the terms of the collective bargaining agreement*" a former probationary employee of the corporation who had not become an employee of the company, second, if so, whether the company had violated the terms of the "stipulation," and third, if so, what the remedy should be, acted within the scope of the reference in answering the first question in the affirmative and in proceeding thereupon to deal with the second and third questions, which he answered by stating that the company had violated the "stipulation" and that the remedy should be an offer of employment to such former employee of the corporation and payment to him of lost wages.   [121–122, 124–125, 128]

BILL IN EQUITY, filed in the Superior Court on January 16, 1959.

The suit was heard by *Dewing, J.*

*Warren H. Pyle,* for the plaintiffs.

*Henry V. Atherton,* for the defendant.

WHITTEMORE, J. The plaintiffs Morceau and Riley, as officers and members of Local 210, International Union of Electrical, Radio & Machine Workers, AFL–CIO (the Union), in a representative capacity, and the plaintiff Stanley Krzynowek (Stanley) in his individual right, appeal from the dismissal in the Superior Court of their bill of complaint to enforce an arbitration award which directed the defendant (Gould) to offer employment to Stanley and to pay him lost wages. The evidence is reported. There is a report of material facts.

Stanley was employed by Gould's predecessor, Nickel Cadmium Battery Corporation (Nicad), from August 19, 1957, to September 1, 1957. On that date Gould purchased Nicad and the employees of Nicad struck. Shortly thereafter Gould reëmployed supervisory and office personnel of Nicad.

On December 27, 1957, Gould and the Union negotiated a bargaining agreement and a separate stipulation for the reëmployment of former employees of Nicad. The strike ended on December 30 and on that date Gould hired a number of former employees of Nicad, but not including Stanley and Joseph Tessier, who had been employees with probationary status only.

The arbitration hearing was held in April, 1958, under the following statement of issues.

"I. [a][1] Does the Union have the authority under Article V, Section 1, 'Seniority Established' and Section 2 'Continuous Service Broken' and Article III, Section 1, 'Recognition' and Section 2 'Conditions of Employment' to represent S. Krzynowek and J. Tessier under the terms of the collective bargaining agreement dated December 27, 1957.[2]

"[b] If so, did the Company violate the terms of the stipulation dated December 27, 1957, regarding rehiring of em-

---

[1] Identifying symbols "[a]" and "[b]" not in original.

[2] The contract, in fact, was executed and dated December 30, 1957.

ployees which was attached and made part of the collective bargaining agreement dated December 27, 1957, and which reads in part as follows:

"1.   All former employees of Nickel Cadmium Battery Corp. (hereinafter referred to as 'Nicad') on the active payroll of Nicad and with permanent seniority as of August 31, 1957, will be offered employment within one week subsequent to the effective date, i.e. December 30, 1957, of the attached collective bargaining agreement.

"5.   The seniority of the above employees shall be equal to the seniority that they held on August 31, 1957, with Nicad and will begin accumulating further seniority as of December 30, 1957.

"7.   There shall be no discrimination against any former Nicad employee for any activity which may have occurred between August 31, 1957, and December 30, 1957.

"8.   The provisions of the agreement are subject to the grievance and arbitration provision of the attached collective bargaining agreement.

"II.   If so, what shall be the remedy?"

The arbitrator, after hearing, awarded:

"I. [Issue I (a)]

"The Union does have the authority under . . . [the articles specified] to represent Stanley Krzynowek and Joseph Tessier under the terms of the Collective Bargaining Agreement dated December 27, 1957.

"II. [Issue I (b)]

"The Company did violate the terms of the Stipulation dated December 27, 1957, regarding rehiring of employees . . . .

"III.

"The remedy shall be for the Company to offer employment to Stanley Krzynowek as an active material processor, Class 1, or in a substantially equivalent classification and to pay him back pay from January 19, 1958, to the date of employment less his earnings elsewhere during said period.

## "IV.

"The grievance of Joseph Tessier is dismissed."

The judge noted that art. IV, § 7, of the collective bargaining agreement provided:

"The arbitrator may consider and decide only the particular grievance presented to him in a written stipulation by the Company and the Union and his decision shall be based solely upon an interpretation of the provisions of this Agreement. The Arbitrator shall not have the right to amend, take away, modify, add to, or change any of the provisions of this Agreement."

The judge found that "although the parties in prior correspondence had referred to the stipulation of December 27, 1957 [in drafting issue I (a)], such reference was entirely omitted in the final draft as submitted to the arbitrator"; that the arbitrator in his findings attached to the award says plainly that whatever right the Union had to represent the employee must originate in the stipulation and that its "rights do not arise out of Article III of the Collective Bargaining Agreement since, as this company contends, the employee has never been an employee of Gould . . . ." The judge concluded that "the arbitrator having determined that the Union's authority to represent the employee stemmed, if at all, from the agreement of December 27, 1957, and since the Stipulation Agreement was not incorporated in . . . [paragraph 1 (a) of the statement of issues] for arbitration, . . . [the arbitrator] was foreclosed from going into the merits of the alleged dispute." The judge ruled that the arbitrator thus did not conform to his authority under the submission and the award was invalid.

1. For the concurrent jurisdiction of the State court to enforce the award see *Charles Dowd Box Co. Inc.* v. *Courtney*, 368 U. S. 502, affirming 341 Mass. 337. The *Dowd* decision (pp. 506–514) authorizes State courts to participate in the fashioning of a body of Federal law for the enforcement of agreements within the ambit of § 301 (a) of the Labor Management Relations Act of 1947, 29 U. S. C. § 185

(1952).[1]  See *Textile Wkrs. Union of America* v. *Lincoln Mills of Ala.* 353 U. S. 448, 456–457; *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America* v. *Lucas Flour Co.* 369 U. S. 95, 101–104; *Karcz* v. *Luther Mfg. Co.* 338 Mass. 313, 317; *McCarroll* v. *Los Angeles County Dist. Council of Carpenters,* 49 Cal. 2d 45, 57–60, cert. den. sub nom. *Los Angeles County Dist. Council of Carpenters* v. *McCarroll,* 355 U. S. 932.

2. The function of the court in reviewing decisions of arbitrators in this field is limited to determining whether the arbitrator has acted within the scope of the reference. Did "the reluctant party . . . agree to arbitrate the grievance or did [it] agree to give the arbitrator power to make the award he made"?  *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.* 363 U. S. 574, 582.  *United Steelworkers of America* v. *American Mfg. Co.* 363 U. S. 564, 568. The question of interpretation of the agreement is for the arbitrator and mere ambiguity in the opinion is not a reason for refusing to enforce the award, even when it permits the inference of a want of authority.  *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* 363 U. S. 593, 597–599.  See 2 B. C. Ind. & Commercial L. Rev. 359.

The Massachusetts decisions exemplify these principles. "[I]n the absence of fraud the decision of the arbitrators is binding even though they may have committed an error of law or fact."  *Kesslen Bros. Inc.* v. *Board of Conciliation & Arbitration,* 339 Mass. 301, 302.  *Hannan* v. *Enterprise Publishing Co.* 341 Mass. 363, 365.  "The parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him."  *Phaneuf* v. *Corey,* 190 Mass. 237, 247.  *Jordan Marsh Co.* v. *Beth Israel Hosp. Assn.* 331 Mass. 177, 186.  Compare *Martignette* v. *Sagamore Mfg. Co.* 340 Mass. 136, 138–139.

3. The conclusion of the judge that the arbitrator exceeded his authority in proceeding to issues I [b] and II was error.  The reference and the award drew their "es-

---

[1] No question arises of the applicability of any aspect of G. L. c. 150C (Collective Bargaining Agreements to Arbitrate) which by St. 1959, c. 546, § 4, took effect December 31, 1959, as applicable to agreements subsequent thereto.

sence from the collective bargaining agreement" (*Enterprise* case, *supra*, p. 597). That agreement was in two writings; it included the stipulation which gave certain rights to former employees of Nicad. The reference itself, in issue I [b], asserted that the stipulation was a part of "the collective bargaining agreement dated December 27, 1957." The arbitrator precisely answered the three questions submitted to him in respect of the two part agreement. "The Union does have the authority . . . . The Company did violate the . . . Stipulation . . . . The remedy shall be . . . ." The arbitrator's authority to proceed beyond issue I [a] depended upon his answer to that issue, not upon whether his reasoning was sound.

We do not agree with Gould that the arbitrator's formal answer to issue I [a] is necessarily belied by an express finding in his opinion.[1] It was inescapable that whatever

[1] The arbitrator's opinion read in part: "The Union does not take the position that Krzynowek and Tessier were improperly refused employment under the first paragraph of the stipulation agreement. In substance, the Union's contention is that these two men were former employees of Nicad who were discriminated against within the meaning of the seventh paragraph of the stipulation agreement and that the arbitration provisions of the collective bargaining agreement are available to them and to the Union.

"The Company, on the other hand, asserts that Krzynowek and Tessier are not, and never have been, employees of Gould-National Batteries, Inc., that their grievances are not within the limits of authority to arbitrate as set forth in the collective bargaining agreement between the Company and the Union, and that the Union has no right to represent them.

"It is undisputed that on December 27, 1957, the Company and the Union entered into two agreements. One was a collective bargaining agreement covering the wages, hours and working conditions under which employees within the appropriate unit at the Easthampton plant were to work until November 15, 1960. The other was a stipulation agreement as to the consideration which was to be given by the Company to persons who had formerly worked for Nicad at the same plant. Whatever rights the Union has to represent the two persons involved in this case must originate in the stipulation agreement. Its rights do not arise out of Article III of the collective bargaining agreement since, as the Company contends, neither person has ever been an employee of Gould-National Batteries, Inc.

"However, the stipulation agreement grants certain affirmative rights to persons who had worked for Nicad. The Union as a party to the stipulation agreement was acting as the representative of these persons. As such representative it is entitled to enforce the rights of former employees of Nicad by means of such procedures as are available to it by law or by the terms of the agreement itself. The agreement expressly states that its provisions 'are subject to the grievance and arbitration provisions of the collective bargaining agreement' and by such language makes available the remedy of arbitration which the Union has invoked in these proceedings.

"The question to be answered is whether the restrictions in paragraph eight of the stipulation agreement require dismissal of the grievances of Krzynowek and Tessier because they are not, and never have been, employees of Gould-National Batteries, Inc."

rights Stanley had to employment must have originated in the stipulation "since, as the company contends, . . . [he had] never been an employee of Gould." It was also true that the Union's right to assert a grievance on behalf of *any former employee of Nicad* was founded in the stipulation, for none such, regular or probationary, had ever been an employee of Gould. No such former employee could get rights under the main collective bargaining agreement until reëmployed pursuant to the stipulation. The language of the opinion which Gould refers to is subject to the construction that the arbitrator was doing no more than to recognize this fundamental circumstance of the dispute which was being arbitrated. The stated premise "[Stanley had] never been an employee of Gould" supports this construction.

We disagree also with Gould's contention that the only question which issue I [a] can conceivably be construed to ask is that to which the arbitrator gave an answer in the opinion, that is, could Stanley have rights under the main contract before being employed thereunder?

It speaks strongly against such a construction that it would render the arbitration substantively meaningless. Gould recognizes that this would be so. Gould asserts that in issue I [a] "the arbitrator was being asked an initial question which he could not possibly answer in the affirmative." "[A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself" (*Warrior* case, 363 U. S. 574, at p. 578) and an intention of the parties to lose the substance of the dispute in the form of the reference would be inconsistent with the underlying purpose of that process.

We hold that there was an implication in question I [a], in its context to the effect that it was to be answered as though the grievance being arbitrated was a grievance under the main contract, and as though Stanley had the status he had had in Nicad. From the employees' point of view it was paramount that they were going back to work in their former jobs in the "Nicad Division" of Gould, a designa-

tion adopted by both Gould and the Union in the stipulation of December 27, 1957. Gould impliedly recognized the significance, in connection with the making of the new agreement, of the status of former Nicad employees under the former Union contract: Printed in exhibit 1, with the main contract of December 27, 1957, and the stipulation of that date, is a "Stipulation of Contract Agreement" by which "Gould-National Batteries, Inc., Nicad Division," and the Union agreed that "all terms and conditions of the agreement between Nicad Battery Corporation and . . . [the Union] are satisfactory and acceptable and that such terms are further satisfactory and acceptable to the Gould-National Batteries, Inc. and that the . . . committee . . . shall recommend to the body of former Nicad employees of Local 210 . . . acceptance . . . [thereof] and that . . . this stipulation shall act as a binding agreement of acceptance . . . [by the committee] subject to ratification."

The arbitrator was not, and we are not, bound to find the meaning of issue I [a] by looking only at the main contract of December 27. It was a highly ambiguous statement and the context is relevant. The specification in issue I [a] of the collective bargaining agreement of December 27, 1957, could be construed to include the stipulation which the next paragraph asserts to be a part of it, and reference may be had to that stipulation and also to the entire context.

It is inconsequential that the implication we see in issue I [a] is not set out in the arbitrator's opinion, or that he does not state the basis in the stipulated provisions of the main agreement[1] for his affirmative answer to issue I [a].

---

[1] The provisions of the main collective bargaining agreement referred to in issue I [a] were in substance as follows: Article V, §§ 1 and 2, specify that an employee shall not attain seniority until he has completed a probationary period of forty-five calendar days and specify circumstances in which seniority will be lost. In art. III, § 1, Gould "recognizes the Union as the sole and exclusive bargaining agent on the issues of rates of pay, wages, hours and conditions of employment affecting production and maintenance employees." Section 2 of art. III makes it a condition of employment with Gould that "employees who are members of the Union . . . remain members in good standing . . . [and] that other . . . employees . . . become . . . members . . . after thirty . . . calendar days of employment in their probationary period or thirty . . . days after the signing of this agreement, whichever is later." "[D]uring . . . [the] forty-five day [probationary] period . . . [a new employee] may be discharged and such discharge shall not constitute a grievance under the terms of this agreement."

We note that there is a reasonable basis therefor. In art. III, § 1, the Union is made the ''sole and exclusive bargaining agent on the issues of rates of pay, wages, hours and conditions of employment affecting production and maintenance employees.'' Stanley was no less a production or maintenance employee because probationary; it could be concluded that the intent was to make the Union the representative of all employees for whatever grievances they might have in the categories stated, or as to matters related thereto, even though not Union members.

4. The arbitrator concluded that paragraph 7 of the stipulation was intended to protect all former employees of Nicad including probationary employees and found that Stanley was discriminated against because of Union activity. It is beside the point whether it was the more reasonable construction that paragraph 7 was subordinate to paragraph 1 which provided for rehiring only those Nicad employees who had seniority. The arbitrator's construction prevails.

5. Gould does not contend that the reëmployment of Stanley could not be ordered. In the *Enterprise* case, 363 U. S. 593, 596, the award directing reinstatement was upheld.

6. Stanley is entitled to a determination of the back pay to which he is entitled under the award up to the date of his reëmployment. Deductions, if any, for periods of layoff will depend upon a finding that he would have been laid off. The arbitrator's award does not foreclose such deductions.

7. The decree is reversed and the case remanded to the Superior Court for further proceedings in accordance herewith.

*So ordered.*