CAPE COD GAS COMPANY *vs.* UNITED STEELWORKERS OF AMERICA, LOCAL 13507.

Suffolk.    May 20, 1974. — May 14, 1975.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Arbitration.    Labor and Labor Union.    Contract,* For arbitration.    *Jurisdiction,* Arbitration.

In a collective bargaining agreement a clause in a provision for binding arbitration of disputes between the company and the union that no arbitrator "shall have the power to add to, or subtract from, or modify any of the terms" of the agreement did not limit an arbitrator in exercising his powers to the literal terms of the contract, nor did it preclude the arbitrator from considering evidence of prior plant practice in interpreting a disputed contract provision. [261-264]

PETITION filed in the Superior Court on June 8, 1973, to vacate the award of an arbitrator.

The case was heard by *Nelson*, J.

*G. Lamar Crittenden, Jr.*, for the plaintiff.

*John F. McMahon* for the defendant.

GOODMAN, J. This is an application by the plaintiff (the company), filed in the Superior Court under G. L. c. 150C, § 11, to vacate an award made by the board of conciliation and arbitration (board) — see G. L. c. 23, § 7 — in an arbitration between the company and the defendant (union), parties to a collective bargaining agreement which provided for arbitration by the board as the final step of a grievance procedure.[1]

The facts out of which the grievance arose, as found by the board and substantially uncontroverted, are as follows: On December 29, 1972, one Ernest Currie, an employee of the company, was assigned to work on the 8:00 A.M. to 4:00 P.M. shift on December 31. He was also asked to work the following shift from 4:00 P.M. to midnight. After changing his New Year's plans, he agreed to do so. He was thus scheduled to work two eight-hour shifts "back to back" on December 31, extending through New Year's Eve. At about 10:00 A.M. on December 31, while working on the first of the two scheduled shifts, he was notified that he would not be needed to work the later shift. He claimed he was en-

---

[1] Article XVI of the agreement, "Settlement of Disputes," provides in pertinent part: "Should any difference arise between the Company and the Union or its members as to the meaning and application of this Agreement, the dispute shall be settled finally in the following manner: . . . 3. If an agreement is not reached with a Vice President of the Company or his designee, the dispute shall then be referred to the Massachusetts Department of Conciliation and Arbitration . . . .. In all matters referred to the Massachusetts Department of Conciliation and Arbitration, as prescribed above, the decision of the Board of Arbitration shall be final and binding on both parties, *provided no Board of Arbitration or arbitrator shall have the power to add to, or subtract from, or modify any of the terms of this Agreement,* or to pass upon or decide any question except that which is submitted to them in the Submission Agreement." The italics are added for convenience, and the italicized portion will be referred to as subclause [a].

titled to eight hours' pay, and the union and the company jointly referred the controversy to the board under the following submission: "Did the Company violate the agreement between the parties relative to the grievance of Ernest Currie dated January 1, 1973? If so, what shall the remedy be?"

The board, with the industry member dissenting, "after having weighed the evidence and arguments of the parties," made the following award: "The Company violated the agreement between the parties relative to the grievance of Ernest Currie dated January 1, 1973 . . .. The Board directs that Ernest Currie be awarded 8 hours pay at the appropriate rate for the shift cancelled on Sunday, December 31, 1972." The company's application to vacate the award was denied in the Superior Court, and judgment was ordered to be entered accordingly. The company appealed to this court. We hold that the Superior Court correctly refused to vacate the award.

The claim was based on the clause of the contract (Art. VI, § 1[e]) insuring that "[e]mployees shall be assigned a definite time to report for work" and providing for advance notice of lack of work and a guarantee of eight hours' work for any employee who reports at his regular time. The submission, made jointly by the parties, thus left to the board the question how, in the circumstances of this case, to deal with the frustration of an employee's expectation of work for which he reported, and the resulting inconvenience. Looking to discover how this not uncommon irritant — the subject matter of Article VI, § 1(e) — had been handled by the parties, the board found that "the evidence regarding past practice reveals that the company has either paid for or provided 8 hours work for those employees who reported before they were notified of the cancellation of their extra or overtime work."[2]

---

[2] The board did not find a prior practice in the apparently isolated instance, mentioned in its opinion, in which another employee scheduled to work two consecutive shifts was not paid for the second shift when notified of its cancellation while working on the first shift. Further, there was no indication in the record of any particular incon-

The award, based on the contract clause informed by the practice, complied precisely with the provision of the arbitration clause that the board may not "pass upon or decide any question except that which is submitted to them in the Submission Agreement." (See fn. 1, *supra.*) Thus "[t]he reference and the award drew their 'essence from the collective bargaining agreement.'" *Morceau* v. *Gould-National Batteries, Inc.* 344 Mass. 120, 124-125 (1962), citing and quoting from *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* 363 U. S. 593, 597 (1960). As was said in *Greene* v. *Mari & Sons Flooring Co. Inc.* 362 Mass. 560, 563 (1972), "In the instant case, the parties contracted to submit their controversy to an arbitrator for final determination. His decision answered the questions submitted to him and was within the scope of the reference. The parties bargained for his final interpretation of their collective bargaining agreement. They got what they bargained for. '[Where] the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his'" — citing *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* 363 U. S. at 599. "Even a grossly erroneous decision is binding in the absence of fraud." *Trustees of the Boston & Maine Corp.* v. *Massachusetts Bay Transp. Authy.* 363 Mass. 386, 390 (1973) (a case of commercial arbitration in which judicial scrutiny is at least no narrower than in a labor arbitration; see *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.* 363 U. S. 574, 578 [1960]).[3]

The company argues that in dealing with this submission the board was limited by subclause [a] (see fn. 1, *supra*), which provides that the board may not "add to . . . or modify any of the terms of this Agreement" — a contention

---

venience to such employee on that occasion as there was in this case where Currie reporting for both shifts had committed himself to the second shift by changing his New Year's plans.

[3] We do not intend to imply that the board interpreted the clause improperly. See *Hannan* v. *Enterprise Publishing Co.* 341 Mass. 363, 365 (1960).

which is open to it. *Morceau* v. *Gould-National Batteries, Inc.* 344 Mass. at 124. *Greene* v. *Mari & Sons Flooring Co. Inc.* 362 Mass. at 562-563. See *School Comm. of Hanover* v. *Curry, ante,* 151, 155-156 (1975). This subclause is common in arbitration clauses. See *Holly Sugar Corp.* v. *Distillery, Rectifying, Wine & Allied Wkrs. Int'l Union, AFL-CIO,* 412 F. 2d 899, 904 (9th Cir. 1969), which characterizes such a subclause as "boiler-plate." Indeed, a substantially similar provision was involved in *Morceau* v. *Gould-National Batteries, Inc.* 344 Mass. at 123-124, in which the court said (p. 124), " '[I]n the absence of fraud the decision of the arbitrators is binding even though they may have committed an error of law or fact.' [citing cases] ... 'The parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him' [citing cases]."

In *United Steelworkers of America* v. *American Mfg. Co.* 363 U. S. 564, 565, and fn. 1 (1960), the court referred to an arbitration clause containing just such a subclause as "a provision for arbitration (regarded as the standard form) of all disputes between the parties 'as to the meaning, interpretation and application of the provisions of this agreement.' " The court pointed out, without dealing explicitly with this subclause (p. 567): "Yet, the agreement is to submit all grievances to arbitration . . .. There is no exception in the 'no strike' clause and none therefore should be read into the grievance clause, since one is the *quid pro quo* for the other." In our case, too, in which the contract binds the parties to arbitrate "any difference . . . between the Company and the Union or its members as to the meaning and application of this Agreement" (see fn. 1, *supra*) and contains a no-strike clause, the board was empowered to deal with the "subject submitted to" them. *Trustees of the Boston & Maine Corp.* v. *Massachusetts Bay Transp. Authy.* 363 Mass. at 391. *Western Iowa Pork Co.* v. *National Bhd. Packinghouse & Dairy Wkrs.* 366 F. 2d 275, 278 (8th Cir. 1966). *Humble Oil & Ref. Co.* v. *Local 866,* 447 F. 2d 229, 233 (2d Cir. 1971).

The company also seems to argue that subclause [a] (see

fn. 1, *supra*) somehow precludes the consideration of plant practice. The answer to this contention is found in *Humble Oil & Ref. Co.* v. *Local 866, supra,* at 232. The contract there provided for arbitration of a violation of "an express provision" of the contract; the court in upholding an arbitration award used much the same approach as we adopt. The court said (p. 232): "In construing the provisions of Article 30-1 of the contract to determine the employees' recall rights, the Chairman made use of a typical battery of construction techniques, relying especially upon the parties' previous practices under predecessor bargaining agreements . . . ." The court further said (pp. 232-233): "We see nothing in the arbitration clause which forbids resort to such rudimentary tools of construction. If the Board were barred from resorting to bargaining history and rights established under similar language in past contracts, the parties to the contract would be remitted to securing arbitration only when there was a violation of a provision so plain and unambiguous as to require no collateral evidence of intent — and we might add hardly requiring arbitration itself. To emasculate the arbitration clause, absent a more clear and definite intent that the parties intended it to have such a wooden effect and to be construed so antiseptically, would be contrary to the well-recognized presumption in labor law favoring private settlement of labor disputes" — citing the *"Steelworkers* trilogy." [4]

---

[4] The court distinguished *Torrington Co.* v. *Metal Prod. Wkrs. Union Local 1645,* 362 F. 2d 677 (2d Cir. 1966), cited by the company, which held that the arbitrator went beyond his authority in ruling that an employer was required to give its employees election day time off because the subject had been a matter of negotiation and was omitted from the contract. The court said (p. 233): "But [in the *Torrington* case] the final agreement itself contained no provision remotely bearing on employee rights for election day time off."

We are not to be understood as approving the *Torrington* case. There was a strong dissent (362 F. 2d at 682-684), and the case has been disapproved in, e.g., *Holly Sugar Corp.* v. *Distillery, Rectifying, Wine & Allied Wkrs. Int'l Union, AFL-CIO,* 412 F. 2d 899, 905 (9th Cir. 1969); *Dallas Typographical Union No. 173* v. *A. H. Belo,* 372 F. 2d 577, 583 (5th Cir. 1967), and by various commentators: Christensen, Labor Arbitration and Judicial Oversight, 19 Stan. L. Rev. 671, 690-693 (1967); Meltzer, Ruminations About Ideology, Law, and Labor

Similarly, in *Western Iowa Pork Co.* v. *National Bhd. Packinghouse & Dairy Wkrs.* 366 F. 2d 275, 278 (8th Cir. 1966), the court dealt with a clause (like subclause [a]) that the arbitrator "shall have no power to add to, subtract from, change or modify any provision of this Agreement but he is authorized only to interpret the specific provisions of this Agreement...." The court said (p. 278): "This exclusion is broad and general in its application and does little more than repeat the law found in the *Enterprise* case, *supra* [363 U. S. at 597 (1960)], to the effect that an arbitrator is 'confined to interpretation and application of the collective bargaining agreement.' This exclusion does not clearly take this dispute or the award outside of the specifically granted authority of the arbitrator. Therefore, resolving all ambiguity of authority, as we must, in favor of coverage, we have no alternative but to hold that the awards are valid." See *Medo Photo Supply Corp.* v. *Livingston,* 274 F. Supp. 209, 214-216 (S. D. N. Y. 1967), affd. per curiam 386 F. 2d 451 (2d Cir. 1967); *United Furniture Wkrs. of America* v. *Virco Mfg. Corp.* 257 F. Supp. 138, 141-143 (E. D. Ark. 1962). See also *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.* 363 U. S. at 578-582; Shulman, Reason, Contract, and Law in Labor Relations, 68 Harv. L. Rev. 999, 1004-1005 (1955); Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1498-1499 (1959).

The company's minute dissection of the board's opinion is adequately answered in *Morceau* v. *Gould-National Batteries, Inc.* 344 Mass. at 124, where the court said, "[M]ere ambiguity in the opinion is not a reason for refusing to enforce the award, even when it permits the inference of a want of authority" — citing *United Steelworkers of Amer-*

---

Arbitration, 34 U. Chi. L. Rev. 545, 552-554 (1967); Feller, A General Theory of the Collective Bargaining Agreement, 61 Cal. L. Rev. 663, 802, fn. 538 (1973); Jones, The Name of the Game is Decision — Some Reflections on "Arbitrability" and "Authority" in Labor Arbitration, 46 Tex. L. Rev. 865, 869-874 (1968). But see *Magnavox Co. of Tenn.* v. *International Union of Elec., Radio & Mach. Wkrs., AFL-CIO,* 287 F. Supp. 47, 51-52 (E. D. Tenn. 1968), affd. per curiam 410 F. 2d 388 (6th Cir. 1969).

*ica* v. *Enterprise Wheel & Car Corp.* 363 U. S. at 597-599, and quoted in *Greene* v. *Mari & Sons Flooring Co. Inc.* 362 Mass. at 562. Further, to a great extent the plaintiff's objections "[a]lthough ... expressed in terms that the arbitrator exceeded the scope of the matter referred to him for decision ... are in fact objections that the arbitrator committed a variety of errors of law." *Trustees of the Boston & Maine Corp.* v. *Massachusetts Bay Transp. Authy.* 363 Mass. at 391-392.

Thus the company's criticism of the board's opinion is without merit. If anything, it demonstrates the futility of its attempted distinction between an erroneous interpretation of a contract term and an addition to a contract term. Whatever may be the value of this distinction in other contexts (see *West Coast Tel. Co.* v. *International Bhd. of Elec. Wkrs.* 431 F. 2d 1219, 1221 [9th Cir. 1970]), in this case it makes no functional difference and is merely semantic.[5]

> *Order for judgment*
> *denying application*
> *affirmed.*

---

[5] Our disposition of this case on its merits makes it unnecessary to deal with the procedural issues argued by the union. See *Massachusetts Nurses Assn.* v. *Lynn Hosp.* 364 Mass. 502, 504 (1974). It is questionable whether they have a basis in the record or were seasonably raised. If necessary, such difficulties as there may be can be cured by amendment in the Superior Court.