School Comm. of Boston *v.* United Steelworkers of America, Local 8751, AFL-CIO, CLC.

SCHOOL COMMITTEE OF BOSTON *vs.* UNITED
STEELWORKERS OF AMERICA, LOCAL 8751, AFL-CIO,
CLC.

No. 89-P-378.

Suffolk. May 15, 1990. - July 27, 1990.

Present: KASS, SMITH, & GILLERMAN, JJ.

*Contract*, Collective bargaining contract. *Labor*, Grievance procedure. *Arbitration*, Parties, Authority of arbitrator. *Practice, Civil*, Standing.

An arbitrator properly determined that one party to an arbitration agreement had acted without cause in directing a contractor to discharge one of its employees, and the arbitrator's order directing reinstatement of the employee with full back pay was correct. [57-59]

In the circumstances of an arbitration matter the issue of attorney's fees was not appropriately raised for appellate review. [59]

CIVIL ACTION commenced in the Superior Court Department on February 3, 1988.

The case was heard by *George C. Keady, Jr.*, J.

*Harold L. Lichten* for the defendant.

*Stephani A. Carter*, Special Assistant Corporation Counsel, for School Committee of Boston.

GILLERMAN, J. Acting in the interests of Boston public school students, the Boston school committee (the committee), in May of 1985, directed ARA Services, Inc. (the company at that time having the Boston bus contract), to terminate the employment of thirty-seven drivers, among whom was Carl Poekel. Two and one-half years later, an arbitrator decided that the committee acted without sufficient cause with regard to Poekel and that he should be reinstated with full back pay. The committee, which had agreed with the defendant (the union) to be bound by the arbitration, brought suit to vacate the award, and the union sought to confirm the award. The judge confirmed the award insofar as it ordered

back pay, and vacated that portion of the award calling for reinstatement of Poekel. Both the committee and the union have appealed.

There is a threshold difficulty. The committee's complaint filed February 3, 1988, recites that its action is brought under authority of G. L. c. 150C, § 11. However, on August 2, 1989, more than one year later, the Supreme Judicial Court announced in *Miller v. Regents of Higher Educ.*, 405 Mass. 475 (1989), that the word "party" in G. L. c. 150C refers only to the parties to a collective bargaining agreement, that is to say, a labor organization and an employer, *id.* at 480, and therefore an individual member of the union had no standing to maintain an action against the employer under the provisions of c. 150C, § 11.

The committee, like the union member in *Miller*, has no standing to maintain an action brought under c. 150C, § 11; it is not a labor organization, it is not the employer of the bus drivers represented by the union, and it was not a party to the collective bargaining agreement between the union and the National School Bus Service, Inc., the successor to ARA Services, Inc. (the employer). The committee was a party, however, along with the union as the other party, to an arbitration agreement dated June, 1987.[1] There the committee and the union agreed to be bound by the decision of an arbitrator in respect of "all outstanding claims and grievances" arising out of the termination of the employment of Poekel.[2]

---

[1] There are three agreements involved in this controversy: (i) the collective bargaining agreement between the union and the bus company, (ii) the arbitration agreement between the committee and the union with regard to Poekel's claim that he was discharged without sufficient cause, and (iii) the agreement between the committee and the bus company which sets the contractual terms of their relationship. The first is referred to as the "collective bargaining agreement," the second as the "arbitration agreement" and the third as the "contract."

[2] The question put to the arbitrator was, "Did the School Department have sufficient cause to direct the termination of the grievant?" Under its contract with the bus company, the committee had the right to call for the termination of the employment of any "unfit" bus driver. See *School Comm. of Boston v. Labor Relations Commn.*, 24 Mass. App. Ct. 721, 723, 725 n.8 (1987).

That arbitration agreement, though not derived from any collective bargaining agreement, is sufficient to permit the committee to maintain this action against the union as the other party to the arbitration agreement, under G. L. c. 251, §§ 1 et seq., and this discussion proceeds on that basis.

We note also that the union acted outside the scope of its collective bargaining agreement with the employer and entered into the arbitration agreement with the committee to whom it owed neither contractual nor statutory obligations, see G. L. c. 150A, § 4B, omitting, meanwhile, the real parties in interest, Carl Poekel, and Poekel's employer. Poekel, as the intended beneficiary of the arbitration agreement, had, and continues to have, the right to enforce the terms of the arbitration agreement as well as the award that emerged from the arbitration process. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193-196 (1982). Similarly the committee entered into an arbitration agreement in respect of a grievance of a person who was not its employee.[3] Both parties, in any event, agreed to be bound by the decision of the arbitrator.

Additional facts are these. On October 19, 1987, a little more than one month after the decision of the court referred to in note 3, *supra*, and only four days before the scheduled beginning of the arbitration proceedings on October 23, 1987, counsel for the committee notified the employer's counsel that, notwithstanding the employer's contract with the committee giving the committee the right to control arbitration proceedings,[4] the committee would not participate in the arbitration hearings and would not assume control of the

---

[3] The arbitration agreement was signed in June, 1987. In September, 1987, this court held, contrary to the committee's claim, that the bus drivers were not employees of the committee. See *School Comm. of Boston* v. *Labor Relations Commn.*, 24 Mass. App. Ct. 721 (1987).

[4] The right to control all grievance proceedings, including arbitration hearings, was no doubt based on the fact that the contract between the parties was essentially a "cost-plus" contract; since the committee picked up the charges, it evidently insisted on controlling expenses. See *School Comm. of Boston* v. *Labor Relations Commn.*, 24 Mass. App. Ct. 721, 726-727 (1987). The committee did not, however, have the right to direct the hiring of any bus driver. *Id.* at 725.

case. The proffered explanation was the decision of this court holding that bus drivers were not employees of the committee, see note 3, *supra*. Evidently the committee expected, in this fashion, to extricate itself from the arbitration agreement. But the committee seems to have misunderstood its position. The arbitration hearings referred to in the committee's contract with the employer meant, no doubt,[5] arbitration proceedings between the union and the employer arising under the collective bargaining agreement, and not those arising as a result of the arbitration agreement signed by the committee and the union and to which the committee expressly had bound itself. Without the consent of the union, the committee's belated attempt to be free of its arbitration agreement with the union was obviously futile.

Thus it was, in any event, that the committee did not appear at, or participate in, the arbitration hearings. The employer did appear, however, in spite of the fact that it was not a party to the arbitration agreement and it could easily have avoided the entire arbitration proceedings merely by being absent. Instead it elected to appear at the hearings and there announced, according to the arbitrator's report, that it was not present as a representative of the committee. It would seem, then, that the employer was there on its own behalf to protect its own interests as Poekel's employer. So far as appears from the record before us, neither the union nor the arbitrator objected to the de facto intervention of the employer, or suggested that the employer formally be made a party to the proceedings. The employer offered no witnesses but, according to the arbitrator's report, it cross-examined the union's witnesses, argued the merits and filed a brief in support of its position.[6]

---

[5]The contract between the committee and the employer is not in the record before us.

[6]Four pages of the thirty-page arbitrator's report are devoted to the recapitulation of the employer's position. In brief, the employer claimed that the arbitrator had no authority to enter any award binding the employer because, unlike the committee, the employer was not a party to the arbitration agreement, that the charges against Poekel were justified, that Poekel was unfit to be a driver, and that in any event the committee can-

One additional fact that was before the arbitrator must be recited. The arbitration agreement covered not only Poekel but also one Jose Herrera, another bus driver who had been discharged at the direction of the committee. The arbitrator recited in her report that the committee decided that Herrera should be reinstated, and he was reinstated by the employer with full back pay.[7] The arbitrator concluded that the committee "does have the ability to remedy employee problems by getting the company to hire people at the [committee's] instigation."

Following the arbitration hearings, the arbitrator filed her report. She found that the committee did not have sufficient cause to direct the termination of Poekel, that the committee "shall reinstate Carl Poekel," and Poekel shall be made whole for any wages lost, less unemployment compensation and other income received that he would not have earned if driving.

The employer, though it participated in the hearings as fully as though it were a party, has taken no further action. The committee, which up to that point had declined to participate in the arbitration hearings (except for a brief appearance at a supplemental hearing on remedy), then filed a complaint in the Superior Court to vacate the award of the arbitrator. The union's counterclaim sought to confirm the award. The judge confirmed the award insofar as it awarded back pay and vacated the award insofar as it ordered reinstatement. Judgment was entered on January 17, 1989, four months before the Supreme Judicial Court issued its opinion in *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006 (1990). That case, where the relevant authorities are collected, reaffirms earlier authority and controls the outcome of this case.

---

not order the employer to hire an employee and therefore the arbitrator cannot enter a reinstatement award against the committee or the employer.

[7]The committee's brief in this court acknowledges that sequence of events.

The *J. Farmer & Co.* case held that mere ambiguity in an arbitrator's award is not an adequate reason for refusing to enforce the award, " 'even when it permits the inference of a want of authority.' " 407 Mass. at 1007, quoting from *Morceau* v. *Gould-National Batteries, Inc.*, 344 Mass. 120, 124 (1962). On its face, the arbitrator's award in *J. Farmer & Co.* violated a clause in the contract, but the court held that the arbitrator "could have found that that clause was modified or waived. . . ." 407 Mass. at 1007-1008.

Assuming, but not deciding, that the committee is correct that the arbitrator exceeded her authority by ordering the committee to "reinstate" — that is, hire — a person who was not ever the committee's employee,[8] the arbitrator may have intended something quite different. As noted earlier, the arbitrator expressly found that the committee in another case decided that the discharged driver, Herrera, should be reinstated, and that the employer thereupon reinstated him. With that as undisputed background, the arbitrator could be understood to have meant that the committee is required to instruct the employer to reinstate Poekel. The committee's brief offers no answer to this interpretation of the award which was put forward by the union in its brief. As in *J. Farmer & Co.*, the arbitrator could have found, as the predicate to her award, that the arbitration agreement between the committee and the union had been modified and expanded by the conduct of the parties.

By arguments that come perilously close to being unconscionable, the committee seeks to avoid entirely the foreseeable consequences of its arbitration agreement, voluntarily undertaken, to resolve "all outstanding claims and grievances between the United Steelworkers of America . . . and the Boston School Dept. relating to the suspension and dis-

---

[8]But see *Morceau* v. *Gould-National Batteries, Inc.*, 344 Mass. at 126-128. The committee's argument relies on the decision of this court referred to in note 3, *supra*. But that decision, involving a petition for investigation of the legality of a strike, does not necessarily dispose of the different issue presented by this case.

charges of Carl Pokel [*sic*]. . . ."[9] The arbitrator, in direct response to the principal question put to her — "Did the School Department have sufficient cause to direct the termination of the grievant . . .?" — found that Poekel had been wronged by the committee without justification and as a result had been damaged. That wrong requires a remedy — a principle which in this country is at least as old as *Marbury* v. *Madison*, 1 Cranch 137, 163 (1803). See *Normand* v. *Barkei*, 385 Mass. 851, 852 n.1 (1982).

There is no genuine issue with regard to the back pay order. At a second hearing before the arbitrator, the union and the committee (which, after filing suit in the Superior Court, had decided to participate in the hearings on remedy) agreed on a formula for determining the amount due Poekel in the event the award is confirmed. That stipulation is now to be enforced.

The union presses for attorney's fees, but neither Federal law nor policy is involved as was the case in *International Assn. of Machinists & Aerospace Wkrs.* v. *Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir. 1976), cert. denied, 429 U.S. 1095 (1977). The arbitrator made no such award; there is nothing in G. L. c. 251 that suggests the appropriateness of such an award, contrast G. L. c. 214, § 6(2)(B) (injunctions in labor disputes); the common law of the Commonwealth is to the contrary, *Fuss* v. *Fuss (No. 1)*, 372 Mass. 64, 70-71 (1977); and proceedings under G. L. c. 231, § 6F, not having been initiated, are not before us for review.

The judgment is vacated and a new judgment is to be entered confirming the award of the arbitrator in its entirety.

*So ordered.*

---

[9] " 'The parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him.' " *Morceau* v. *Gould-National Batteries, Inc.*, 344 Mass. at 124.