## MICHAEL N. KESSLER *vs.* CAMBRIDGE HEALTH ALLIANCE.

No. 03-P-732.

Middlesex. April 14, 2004. - November 29, 2004.

Present: DUFFLY, COHEN, & MILLS, JJ.

*Practice, Civil,* Complaint, Motion to dismiss, Standing. *Contract,* Employment, Collective bargaining contract. *Labor,* Grievance procedure. *Employment,* Records. *Statute,* Construction.

A Superior Court judge properly dismissed, for failure to state a claim, an action brought by an individual employee seeking direct judicial redress for alleged violations of a collective bargaining agreement and a related employment contract, where that employee did not first attempt to utilize the grievance or arbitration processes available through those agreements, and where only the collective bargaining unit had standing to enforce the collective bargaining agreement, which, contrary to the defendant's contention, formed the central basis of the breach of contract claim. [592-594]

In an appeal of a Superior Court action brought by an employee against his former employer, alleging violation of G. L. c. 149, § 52C, governing the maintenance of personnel records by private or public employers, this court concluded that the employee was entitled to seek a judicial determination whether documents in possession of his former employer constituted part of, and were required to be physically included in, his personnel file, and that the employee's remedy for violation of the statute was limited to the opportunity to comment, correct, or expunge incorrect or false information contained in his personnel files. [594-598]

CIVIL ACTION commenced in the Superior Court Department on October 10, 2001.

A motion to dismiss was heard by *Nonnie S. Burnes,* J.

*Michael N. Kessler,* pro se.

*Lisa Van Pelt Crutchfield* for the defendant.

DUFFLY, J. One month after he was hired by the defendant Cambridge Health Alliance (Alliance) as a resident fellow in its child and adolescent psychiatry unit, the plaintiff, Michael N. Kessler, a medical doctor licensed to practice in the Commonwealth, was fired because of an unsatisfactory criminal of-

fender record information (CORI) report. Unhappy with Alliance's responses to several requests for copies of his personnel records, Kessler filed a complaint in Superior Court alleging that Alliance had breached the collective bargaining agreement and a supplementary "House Officer Agreement" (count I), and had violated G. L. c. 149, § 52C, governing the maintenance of personnel records by private or public employers (count II). He sought declaratory and injunctive relief, and requested that the alleged statutory violation be referred to the Attorney General for "further action including the possible imposition of a fine." The complaint was dismissed for failure to state a claim, Mass. R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), and Kessler filed this appeal.

*Background.* Upon being hired by Alliance on July 1, 2001, Kessler became a member of a collective bargaining unit, the Cambridge Hospital House Officers' Association (association). As a union member, Kessler was also the beneficiary of the association's collective bargaining agreement and a supplementary House Officer Agreement with the Cambridge Public Health Commission. His employment was conditioned upon a satisfactory CORI report, a copy of which he had authorized Alliance to obtain. Kessler was terminated from his employment on August 1, 2001, and by a letter of that date, Alliance's personnel department notified Kessler that the termination was based on his "failure to satisfactorily meet the standards for a CORI check and the circumstances attendant on that failure."

Thereafter, Kessler made three written requests for copies of his personnel file, in which he invoked provisions of both the collective bargaining agreement and House Officer Agreement, along with G. L. c. 149, § 52C. See note 4, *infra*. After the first request, Alliance sent Kessler a copy of his file, which included forms confirming his dates of hire and termination; Kessler's application for employment; and copies of Kessler's passport, wage withholding statement, signed confidentiality agreement, and insurance sign-up forms. The second request essentially reiterated the first, and Alliance responded that the file had been sent. Evidently suspicious that copies of certain documents had been withheld, Kessler's third request stated that he also sought "copies of any and all documents which are held in an official

training director's file," and emphasized that he sought all documents "including those which you have reason to believe I may have received in original form previously." In response, Alliance sent him a letter stating that it was not obliged to send him multiple copies of his personnel file, and asking him to "[p]lease advise if you have not received the previously forwarded copy of your file . . . [or] [i]f you have reason to believe the copy of your personnel file that you received is not up to date." Kessler never responded to this letter.

It is undisputed that Kessler did not attempt to utilize the provisions relative to grievances and arbitration within the collective bargaining agreement. Instead, Kessler filed the underlying complaint in Superior Court, in which he alleges that "examination of the contents of [the personnel file that Alliance had sent to him] reveals a notable absence of documents which would reasonably be expected to be within the plaintiff's file and for which plaintiff has given no waiver of his right to examine." The supposed missing or withheld documents included the August 1, 2001, termination letter, copies of correspondence sent by the senior director of labor relations for Alliance, a letter from the director of Alliance's department of psychiatry, and "notes and/or information" from the director of Alliance's training program for the child and adolescent psychiatry department.[1]

A Superior Court judge dismissed both counts of the complaint for failure to state a claim upon which relief could be granted. The judge concluded that Kessler lacked standing to pursue on behalf of the association a claim that the collective bargaining agreement had been breached by the employer. The judge further concluded, based on the text of G. L. c. 149, § 52C, that only the Attorney General has standing to enforce

---

[1] The complaint did not allege to whom the letters were sent. At a hearing following the filing of the complaint, it became apparent that Kessler was seeking copies of certain correspondence of Alliance officials to the State Board of Registration in Medicine, to which Alliance apparently had reported possibly negative information about Kessler. Alliance's counsel acknowledged at the hearing that this information was unflattering to Kessler and would not have been included by Alliance in an employee's personnel file. We note that the consent form Kessler signed allowing Alliance to make a CORI check provided that "CORI information will only be viewed by the Vice President of Human Resources or designee."

the provisions of § 52C, and that no private cause of action for enforcement is contemplated by the statute.

Now on appeal from the judgment of dismissal, Kessler argues that (1) the facts in the complaint do not establish conclusively that Kessler's employment contract was governed by the collective bargaining agreement (which he did not personally sign, in contrast to the House Officer Agreement, which he did sign), and that the judge erred in so assuming or concluding; and (2) G. L. c. 149, § 52C, does permit an individual to seek a declaration of rights in a civil matter regarding his right of access to his personnel records.

*Discussion.* A complaint is properly the subject of dismissal under rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). A complaint may not be dismissed "if it would support relief under any theory of law" (emphasis omitted). *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 89 (1979). When evaluating the sufficiency of a complaint under rule 12(b)(6), the factual allegations, together with inferences in the plaintiff's favor reasonably drawn from the facts, are taken as true. *Eyal* v. *Helen Bdcst. Corp.*, 411 Mass. 426, 429 (1991). Having considered Kessler's claims in this light, we will affirm the judgment of dismissal as to count I of the complaint; as to count II, we will reverse the judgment.

1. *Breach of contract claim.* In his complaint, Kessler alleged that both the collective bargaining agreement and the House Officer Agreement afforded him the right to see his personnel file. In response to Alliance's statement under Superior Court Rule 9A (1998), asserting that Kessler had "no standing to raise a breach of contract claim arising out of a collective bargaining agreement," Kessler disavowed reliance on the collective bargaining agreement, stating that his claim arose out of the House Officer Agreement, which "forms the central basis for the instant breach of contract claim." On appeal, Kessler reiterates his rule 9A argument that his contract claim was not governed by the collective bargaining agreement. There is no merit to this argument. The House Officer Agreement, which

Kessler continues to acknowledge as relevant to his claim, specifically references the collective bargaining agreement numerous times, including in section 11, which Kessler invokes as the basis for his right to review his file. Section 11 of the House Officer Agreement provides, in pertinent part:

> "Any House Officer has the right to examine his/her folder, and to dispute any evaluation, as stipulated in Article XI [of the collective bargaining agreement]."

Section 14 of the House Officer Agreement informs house officers such as Kessler that the grievance procedures of the collective bargaining agreement apply to them. Section 14 provides, in pertinent part:

> "House Officers should use the grievance procedure outlined in Article III of the [collective bargaining agreement] for complaints."

Count I of the complaint was properly dismissed for the reason that Kessler lacked standing to bring it and also because he failed to exhaust the remedies provided through the collective bargaining agreement's grievance and arbitration provisions. See, e.g., *Balsavich* v. *Local 170, Intl. Bhd. of Teamsters*, 371 Mass. 283, 286 (1976) (Kaplan, J.), and cases cited ("Employees may not simply disregard the grievance procedures set out in a collective bargaining contract and go direct to court for redress against the employer. . . . They must initiate the grievance procedures as the contract provides and it is only when the union fails in its duty to represent them fairly in pressing the grievance, or the employer repudiates or otherwise nullifies the grievance machinery, or the union and the employer contrive together to subvert it, that the employees are free to try judicial remedies"); *Miller* v. *Board of Regents of Higher Educ.*, 405 Mass. 475, 477 (1989); *Pattison* v. *Labor Relations Commn.*, 30 Mass. App. Ct. 9, 23 (1991). See also *School Comm. of Boston* v. *United Steelworkers of America, Local 8751, AFL-CIO, CLC*, 29 Mass. App. Ct. 53, 54 (1990). Compare *Berkowitz* v. *President & Fellows of Harvard College*, 58 Mass. App. Ct. 262, 275-276 (2003). The reasoning and holding in *Miller* provide the basis for dismissal of the claim that Alliance breached the collective bargaining agreement and the supplementary House

Officer Agreement. In *Miller* v. *Board of Regents of Higher Educ., supra,* the plaintiff, a professor at a State college and member of a collective bargaining unit, was denied tenure by the defendant employer but failed to fully utilize the grievance procedure specified in the collective bargaining agreement. 405 Mass. at 476-477. That failure in turn led an arbitrator to conclude that no arbitrable dispute was presented and that the plaintiff had waived his right to seek resolution of his grievance under the collective bargaining agreement. *Ibid.* When the plaintiff's union refused to appeal the arbitrator's ruling, the plaintiff filed an action under G. L. c. 150C, § 11, to vacate the arbitrator's decision. The court ruled that the plaintiff was not a proper party to seek redress under a collective bargaining agreement; the union (not its individual members) was a party to the collective bargaining agreement with standing to seek redress of an alleged breach of that agreement. *Id.* at 480.

The same result obtains here by analogy. Kessler seeks direct judicial redress for alleged violations of the collective bargaining agreement and the House Officer Agreement without first attempting to utilize the grievance or arbitration processes available through those agreements. Only the association has standing to enforce the contract. See *id.* at 479-480. Kessler's failure to enlist support from the association through use of the grievance procedure in his dispute with Alliance over information in his personnel file precludes him from maintaining a breach of contract claim.[2]

*2. Claim under G. L. c. 149, § 52C.* Kessler's claim under G. L. c. 149, § 52C, as amended through St. 1998, c. 231, stands on a somewhat different footing. In his complaint, Kessler asserts that copies of certain letters and other docu-

---

[2]The collective bargaining agreement and House Officer Agreement describe rights similar but not identical to those in G. L. c. 149, § 52C (see part two, *infra*). According to the House Officer Agreement, a member may review his file, including all employee performance evaluations, and may dispute any evaluation. The collective bargaining agreement sets forth the same rights: an employee may file written commentary to any performance evaluation, may examine his file, and may obtain a copy of it (minus any material he has previously waived the right to examine). The agreements are silent as to what information or documents are to be included within a personnel file; they make no provision for the expungement of false material; and they do not incorporate, much less mention, § 52C.

ments containing information about him that were in the possession of, or were circulated to third parties by, certain Alliance officials were personnel records that should have been included in his personnel file where they would then be subject to review by Kessler as provided by § 52C.

In dismissing this count, the judge ruled that only the Attorney General has the power to enforce the statute. A reading of G. L. c. 149 as a whole[3] supports the conclusion that enforcement by the Attorney General is with respect to provisions in § 52C requiring certain employers to maintain "personnel record[s]," as that term is defined in § 52C (subject to specified fines for violation of that section), whereas an employee retains

---

[3]General Laws c. 149, which includes § 52C, constitutes a loose collection of sections regulating a wide range of business and labor activities within the Commonwealth, including, for example, actions of employers relative to union activity, strikes, lockouts, and union organizing (see, e.g., §§ 20, 20A-20E, 22-24); age and gender discrimination within the workplace (§§ 24A-24J, 105A-105C); child labor laws (see, e.g., §§ 56-99); and rights of employees to the prompt payment of wages (§§ 148-150).

The Attorney General is given general enforcement powers over the whole of c. 149, including the power to conduct inspections and investigations of workplace conditions, to impose civil fines, and to seek criminal sanctions. See, e.g., § 2 ("The attorney general shall . . . enforce the provisions of this chapter, and shall have all necessary powers therefor"); §§ 3, 5-6, 10 (inspections of places of employment and investigations by Attorney General or Department of Labor); § 27C (Attorney General's authority to, inter alia, initiate criminal proceedings and issue civil citations).

However, notwithstanding these general enforcement powers of the Attorney General, there are numerous provisions in c. 149 in which private individuals, including employees, may seek judicial relief to vindicate personal rights guaranteed by specific sections. Thus, for example, a person "aggrieved by" an employer's unlawful requirement that he undergo a polygraph test as a condition of employment may seek judicial relief. See § 19B(4). "[A]ny person aggrieved [or] any interested party" may file a complaint in the District Court regarding the violation of a regulation pertaining to workplace safety or conditions. See § 6. Section 149 permits an employee to file a complaint in the District Court against an employer who has violated the prompt payment of wages law, § 148, notwithstanding the provision in § 150 that the Attorney General also may make complaint for the violation of § 148. See *Commonwealth v. Northern Telecom, Inc.*, 25 Mass. App. Ct. 255, 257-258 (1988) (§ 150 is merely "permissive" as to [Attorney General's] filing of a complaint, and, thus, does not foreclose an employee from filing a complaint under § 149).

The common thread seems to be that of injury or loss, personal in nature, which the affected individual ought to be able to vindicate.

a personal remedy related to the correction of information in his file and expungement of documents in his file containing false material.[4]

As amended by St. 1996, c. 151, § 389, G. L. c. 149, § 52C, sixth par., provides that "[t]his section shall be enforced by the attorney general." (Prior to the 1996 amendment, enforcement was by the Department of Labor and Industries.) The 1996 amendment left intact a provision that has remained in place virtually unchanged since § 52C was inserted into the General Laws by St. 1986, c. 509, providing for a limited right of personal action to correct information in a personnel file. That provision, in the third paragraph of § 52C, establishes a mechanism whereby an employee and employer may resolve disagreements as to information contained in a personnel record, and "[i]f an employer places in a personnel record any information which such employer knew or should have known to be false, then the employee shall have remedy through the collective bargaining agreement, other personnel procedures or judicial process to have such information expunged."[5] See note 4, *supra.*

---

[4]General Laws c. 149, § 52C, third par., permits an employee who disagrees with information contained in a personnel record to

> "submit a written statement explaining the employee's position which shall thereupon be contained therein and shall become part of such employee's personnel record. The statement shall be included when said information is transmitted to a third party as long as the original information is retained as part of the file. If an employer places in a personnel record any information which such employer knew or should have known to be false, then the employee shall have remedy through the collective bargaining agreement, other personnel procedures or judicial process to have such information expunged."

[5]Such personal right, like the right to prompt receipt of wages, see *Newton* v. *Commissioner of the Dept. of Youth Servs., ante* 343, 346-347 (2004), does not require the employee to seek redress under a collective bargaining agreement before seeking judicial enforcement of the right. As we recently observed, although "public policy favors the resolution of [a] dispute [the subject of which is encompassed within a collective bargaining agreement], . . . it is also well established that there are certain personal, statutory rights that can be enforced judicially even though they are incorporated into a collective bargaining agreement." *Id.* at 346 (holding the prompt payment of wages statute to be an independent statutory right enforceable judicially notwithstanding a collective bargaining agreement).

Implicit in the personal right set out in § 52C must be the right to seek a judicial determination whether a document is a "personnel record" as defined by the statute and therefore constitutes a part of, and must be physically included in, the personnel file. Cf. *Wakefield Teachers Assn.* v. *School Comm. of Wakefield*, 431 Mass. 792, 796-799 (2000) (construing "personnel" file in the context of disclosure requirements under public records statute, G. L. c. 66, § 10).

Based on an indulgent reading of Kessler's complaint, from which we have drawn all reasonable inferences in his favor (our reading having been informed by Kessler's claims on appeal as well as his argument to the motion judge), we conclude that under G. L. c. 149, § 52C, Kessler is entitled to seek a determination whether documents in the possession of Alliance are "documents relating to disciplinary action" concerning Kessler and thus constitute part of and must be physically included in his personnel file. See § 52C, first par. ("all of the following written information or documents to the extent prepared by an employer of twenty or more employees regarding an employee shall be included in the personnel record for that employee: . . . any . . . documents relating to disciplinary action regarding the employee"). Cf. *Wakefield Teachers Assn.* v. *School Comm. of Wakefield*, 431 Mass. at 798 (case-by-case determination required, but at a minimum legislative term "personnel file" includes "disciplinary documentation . . . or termination information"). If the motion judge determines that such documents are "personnel record[s]," they become subject to review by Kessler who then will have the right to correct or comment on the information contained therein, or seek its expungement.[6]

We reject Kessler's assertion that he is entitled either to damages for violation of the provisions of G. L. c. 149, § 52C, or an order directing that the Attorney General impose a fine for such violation. His remedy is defined by the statute, which provides employees with the opportunity to comment on, correct, or expunge incorrect or false information contained in personnel files that pertain to them.

---

[6]In light of the procedural posture of this case, and the lack of argument addressed to the issue, we do not discuss the definition of the term "expunged," nor the potential ramifications of an order to expunge.

Based on the foregoing, we conclude that count I of the complaint was properly dismissed and we affirm the judgment of dismissal as to that count; the judgment as to count II is reversed.

*So ordered.*